JACK L. WARNER, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97401.   Promulgated October 15, 1940.

*Stanleigh P. Friedman, Esq.*, and *Lawrence A. Baker, Esq.*, for the petitioner.

*B. M. Brodsky, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined the following deficiencies in gift tax:

| | |
|---|---|
| 1932 | $75.14 |
| 1933 | 541.60 |
| 1935 | 3,969.41 |

The petitioner assigns as error the action of the Commissioner in holding that a gift tax is due from the petitioner on account of income paid in each year to his son and former wife from a trust established by his brother Albert. The Commissioner raises, as an alternative to the correctness of his determination, an affirmative issue that he erred in failing to tax as gifts to the petitioner the income payments made in the taxable years from a trust established by the petitioner. The petitioner claims two exclusions of $5,000 each in case the respondent's primary contention is sustained, three in case the respondent's alternative contention is sustained, and two others in respect to an "insurance trust." The facts have been stipulated.

Harry, Albert, and Jack L. Warner are brothers. They are the principal executives of Warner Bros. Pictures, Inc. Each has a substantial amount invested in that corporation. The death in 1931 of Lewis Warner, son of Harry, who had been expected to succeed the three brothers in representing the family interests in the corporation, caused the brothers to consider ways and means of insuring the financial security of themselves and their families and of protecting themselves against the exigencies and hazards of the talking picture business, in which the bulk of their fortunes was invested.

They decided to place about $6,000,000, invested in United States Government obligations, in three trusts. The trusts were to be substantially identical except as to beneficiaries and were to be as safe as possible from acts of the brothers and their families. Stanleigh P. Freidman has been closely associated with the Warners as counsel since 1912. They consulted him and he drew three trust instruments to secure a "maximum of revocability," to prevent any one brother from invading the corpus, to exclude any "possibility of reverter" to the grantor of the corpus of any trust, to prevent the grantor of a trust from receiving income of that trust, to prevent any one brother from dominating the affairs of the family of a deceased brother, and to minimize and avoid estate taxes. Counsel also suggested that the trusts be created before the gift tax provisions proposed in the 1932 Revenue Bill should become the law. The three trusts were created on May 26, 1932, one by each brother, and each brother transferred to the trust created by him $2,000,000 face amount of United States Government obligations belonging to him.

The trust created by Albert Warner provided that the income from one-half of the corpus should be paid to the petitioner, the income from one-fourth should be paid to Jack M. Warner, son of the petitioner, and the income from one-fourth should be paid to Irma Warner, then the wife of the petitioner. The income was so paid during the three taxable years. The trustees named were the three Warner brothers, Friedman, and a bank. The power to revoke, alter, and amend was vested exclusively in Harry Warner, Friedman, and the petitioner, acting together. The corpus affected by any revocation was to go to the petitioner or his estate. The Commissioner has held that the petitioner was the grantor of that trust, he could revoke it, and the income payments to Irma and Jack M. were gifts from him.

The petitioner created a similar trust on May 26, 1932, under which the income from one-half was payable to the wife and daughters of Harry. The trustees were the same. The power to revoke, alter, and amend was vested in Harry, Albert, and Friedman, and the corpus affected by a revocation was to go to Harry. Harry also

created a similar trust on the same day, the chief differences being that the income was payable to Albert and his wife, the power to revoke, alter, and amend was vested in Albert, Friedman, and the petitioner, and the corpus affected by a revocation was to go to Albert.

It does not appear that any one of the Warners would have created a trust for the benefit of his brother's family had not the other two agreed at the same time to create similar trusts but, on the contrary, the creation of each was dependent upon and in consideration of the creation of the other two.

The Commissioner has determined the deficiencies upon the theory that the petitioner was the settlor of the trust which made the payments to his son and his former wife; he and two persons without adverse interests could revoke the trust; the trust was an incomplete gift; and the payment of the income to the son and former wife constituted a gift taxable to the petitioner. The Commissioner still advances that theory as his primary contention. He argues that the petitioner was the real, though not the nominal, grantor of the trust benefiting the petitioner and his family as a result of the reciprocality of the almost identical trusts. The case of *Allan S. Lehman, et al., Executors*, 39 B. T. A. 17; affd., 109 Fed. (2d) 99; certiorari denied 310 U. S. 637, holds, under similar circumstances, that one who by paying a *quid pro quo* has caused another to create a trust for his benefit may properly be regarded as the settlor. The Commissioner continues with the argument that the petitioner, the settlor, has retained for himself, in conjunction with two others without adverse interests, the power to alter, amend, or revoke the trust. Therefore, concludes the Commissioner, the income, which the petitioner had the power to withhold, was a gift as it was paid to the wife and son during the taxable years.

He also makes an alternative argument, solely for protection and quite subordinate to the one just described. It is that the payments of income from the trust created by the petitioner for the benefit of Harry's family are taxable gifts from the petitioner, since the reservation of powers in others to alter, amend, or revoke left the gift to the beneficiaries incomplete until income was actually paid to them.[1]

An absolutely essential premise in each of these contentions of the Commissioner is that current income from a revocable trust constitutes a taxable gift at the time it is paid to the beneficiaries. The Board has held directly to the contrary in *Estate of Giles W.*

---

[1] It would appear that the payment of this income could not be a taxable gift from the petitioner under any circumstances, since he had parted absolutely with the property and had retained no power to revest title in himself. Cf. section 501 (c) of the Revenue Act of 1932, repealed as unnecessary by section 511 of the Revenue Act of 1934.

*Mead*, 41 B. T. A. 424, after considering the same arguments which the Commissioner makes here to support his premise. The Board disagrees with the present argument of the Commissioner that the *Mead* case was incorrectly decided. He next attempts to distinguish the present case from the *Mead* case on the ground that there the income of the trust was not taxable to the settlor, whereas here it would be. We need not decide whether the factual difference exists, because it would not distinguish the cases in any event. The income tax question was mentioned in the *Mead* opinion, but that opinion was not made to depend upon whether or not the income of the trust was taxable to the grantor. The cases are not distinguishable upon the ground suggested by the Commissioner or upon any other ground that has come to our attention. It follows that the payment of the income of the trusts was not the occasion of a taxable gift and neither argument of the Commissioner supports his determination of deficiences.

The only question remaining for decision is whether the petitioner is entitled to annual exclusions up to $5,000 for each beneficiary in computing his annual gifts to an insurance trust resulting from his payment of the annual premiums. The petitioner had irrevocably assigned to the trust certain policies of life insurance upon his own life. The trustees were to collect the proceeds upon his death, invest them, and pay the income from the investments to the son and to the then wife of the petitioner, with remainders over. The interest of the wife was eliminated on March 19, 1935, and the son remained as the sole life beneficiary. The payment of the premiums did not constitute gifts of future interests and, consequently, the exclusions are allowed under section 504 (b) of the Revenue Act of 1932. *Edwin Goodman*, 41 B. T. A. 472; *Welch* v. *Davidson*, 102 Fed. (2d) 100. A separate exclusion is allowed for each beneficiary. *Wilton Rubinstein*, 41 B. T. A. 220. *Contra, United States* v. *Ryerson*, 114 Fed. (2d) 150.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

OPPER, dissenting: Revenue Act of 1932, section 501 (c) provides:

The [gift] tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, * * * but * * * any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of such income by gift.

Although this section was repealed by Revenue Act of 1934, section 511, that action was not retroactive and can have no effect on two of the years, 1932 and 1933, which are before us here. Of greater

and seemingly controlling significance is the reason given for the repeal, which was: [1] "Since the principle expressed in that section is now a fundamental part of the law by virtue of the Supreme Court's decision in the Guggenheim Case." [2] In that case Mr. Justice Cardozo made it clear that where the power to revoke is retained no completed gift of principal or future income results. "As to the principal of the trusts and as to income to accrue thereafter the gifts were formal and unreal." The opinion goes on to say that in making "deeds of gift after the Act of 1924" taxpayers "had the assurance of a Treasury regulation that the tax would not be laid, where the power of revocation was uncanceled, *except upon the income paid from year to year.*" (Emphasis added.) If this statement of existing law was the reason for the repeal of section 501 (c), that action is no reason for failure to apply the gift tax to "the income paid from year to year."

And since it was the payment of income "which was taxed as a transfer and not the transfer in trust, the statute was not retroactively applied" [3] so as to contravene the prospective emphasis furnished by section 501 (b).

I respectfully dissent.

DISNEY and HARRON agree with this dissent.

---

[1] H. Rept. No. 704, 73d Cong., 2d sess., p. 40, Sen. Rept. No. 558, 73d Cong., 2d sess., p. 50. And see *Estate of Sanford* v. *Commissioner,* 308 U. S. 39, 45.

[2] *Burnet* v. *Guggenheim,* 288 U. S. 280.

[3] *Estate of Sanford* v. *Commissioner, supra,* p. 43.