Antoinette K. Brown v. Commissioner.
Brown v. Commissioner
Docket No. 109377.
United States Tax Court
1944 Tax Ct. Memo LEXIS 368; 3 T.C.M. (CCH) 148; T.C.M. (RIA) 44044; February 21, 1944
*368 S. Leo Ruslander, Esq., First Nat. Bank Bldg., Pittsburgh, Pa., for the petitioner. William P. Harris, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined deficiencies in gift tax as follows: 1934
$ 52.51
1935
272.13
1937
3,215.99
1938
2,588.48
1939
3,918.90
1940
4,893.44
The principal issue is whether the distributions of the income of a trust, by trustees, in accordance with the terms of an indenture executed by petitioner, constituted gifts by petitioner. Another issue, being one of fact as well as of law, arises in connection with the year 1939. Petitioner denies that any distribution of income was made to a beneficiary under the trust in that year. The basic facts, particularly those applicable to the first issue, are not in dispute. The trust instrument has been before the Circuit Court of Appeals for the Third Circuit and before this tribunal twice. (Commissioner v. Brown, 122 Fed. (2d) 800, reversing Antoinette K. Brown, 42 B.T.A. 693 and Brown v. Commissioner, 131 Fed. (2d) 640, certiorari denied *369 318 U.S. 717, affirming Antoinette K. Brown, 46 B.T.A. 782.) It is unnecessary to repeat the facts shown in those opinions. Briefly, it has been judicially determined that the trust income is not includible in petitioner's gross income under sections 166 or 167 of the applicable revenue acts and the code but that it is includible in her gross income under section 22 (a). We find the facts to be as stipulated, including those set out in the opinions referred to above. The findings hereinafter made are based partially upon the facts so shown and partially upon evidence adduced at the hearing. Findings of Fact Petitioner is the grantor of a trust dated January 1, 1927, amended in writing on August 10, 1936, and again on November 13, 1937. Copies of the three instruments are attached to the petition. Joseph P. Knapp was appointed trustee of the trust on the date it was created and accepted the trust. Additional securities were later added to the trust corpus. The income was originally payable $35 a month to a retired servant and the residue to Josephine Ballard, a friend of petitioner. Josephine Ballard died in 1937. On August *370 10, 1936 petitioner, by indenture, substituted her husband, Paul G. Brown as trustee in place of Joseph P. Knapp and he accepted the trust. After the death of Josephine Ballard petitioner modified the trust in writing on November 13, 1937, directing the distribution of income as follows: - $35 per month to the retired servant and the residue to her husband, Paul G. Brown. No other modifications of the trust by instruments in writing were made during the years 1932 to and including 1940. Margaret Kane, the retired servant, died in 1938. The trust income was distributed in the years and amounts and to the persons shown below: Year
Total
Margaret Kane
Josephine Ballard
Paul G. Brown
1932
$14,764.55
$420.00
$14,344.55
1933
25,014.78
420.00
24,594.78
1934
21,113.26
420.00
20,693.26
1935
22,847.42
420.00
22,427.42
1936
36,449.73
420.00
36,029.73
1937
41,697.40
420.00
27,777.40
$13,500.00
1938
25,877.86
25,877.86
1939
34,736.46
(Recipient in issue. See later findings)
1940
38,890.86
38,890.86
No gift tax returns were filed by petitioner for the years 1932 to and including 1940, except for the year 1936, until March 24, 1941, when gift *371 tax returns on Form 709 for each of the years, except 1936, were filed. Attached to each return was a rider, reading substantially as follows: "This return is made under protest and solely for the purpose of preventing the imposition of penalties. The transfer of property by gift and any duty to file a gift tax return is denied. "Briefly the facts are that Antoinette K. Brown established an irrevocable trust in the year 1927 reserving the power to change beneficiaries. In the year 1939 income from said trust in the amount of $34,736.46 was distributed to Paul G. Brown. The Commissioner of Internal Revenue is now for the first time in the year 1941 asserting that the income from the trust was in the year for which this return is filed the property of Antoinette K. Brown and its transfer to designated beneficiaries 'transfers by gift' subjecting her to gift tax liability. It is denied that income of the Antoinette K. Brown Trust is the property of said Antoinette K. Brown or that its distribution to designated beneficiaries is a transfer by her. "Gift tax returns are required only in the case of 'transfers by gift.' Since the question here is whether or not there were in fact 'transfers *372 by gift.' it is denied that a return must be filed. However, this return containing information as to trust income distributions is filed in order to safeguard the donor of the trust from the imposition of any penalties." The statement in the gift tax return for the year 1939 that the income of the trust for that year, in the amount of $34,736.46, was distributed to Paul G. Brown is erroneous. The income of the trust for that year was all distributed to the settlor of the trust, petitioner herein, under circumstances which will be referred to in more detail in our opinion. Opinion The audit made by the department covered all years from 1932 to 1940 inclusive. No deficiencies in tax were determined for the years 1932 and 1933, although the Commissioner found that gifts in the respective amounts of $14,344.55 and $24,594.78 had been made by petitioner. The exclusions (sec. 504 (b) Revenue Act of 1932) and deductions (sec. 505 Revenue Act of 1932), allowed by the Commissioner equalled the amount distributed to the beneficiaries. The statute of limitations (sec. 517 Revenue Act of 1932; sec. 1016 I.R.C.) prevented the Commissioner from determining a deficiency for 1936, a return having *373 been filed for that year reporting gifts not presently in controversy; but the payments made to the beneficiaries in that year have been included in determining, for subsequent years, the net gifts for preceding years. Since no returns had been filed for the other years until shortly before the deficiencies were determined, the bar of the statute is not raised nor applicable as to them. As indicated at the outset, the principal issue is whether the distributions of the trust income to the beneficiaries of the trust are taxable as gifts made by petitioner. Under this issue we consider only the payments made in 1934, 1935, 1937, 1938 and 1940. Petitioner places her chief reliance upon Estate of Giles W. Mead, 41 B.T.A. 424 in connection with which the Commissioner noted his nonacquiescence and instituted an appeal, which was subsequently dismissed (116 Fed. (2d) 279). Cf. Jack L. Warner, 42 B.T.A. 954, reversed 127 Fed. (2d) 913. Following reversal of the Warner case further consideration was given to the question involved in the Mead case and conclusion was *374 reached that the "retained control [by the grantor] over the income - the right to apportion it among the beneficiaries in any manner he should see fit, to exclude any of the beneficiaries, and to divest his wife of the right to receive it simply by directing that it be paid to others - made the recipient subject to petitioner's bounty from year to year and the payment of the income by the trust * * * constituted gifts by petitioner in the year paid by the trust * * *" Leonard A. Yerkes, 47 B.T.A. 431, 433. Affirmed by Order C.C.A. 3, April 19, 1943. The Yerkes case represents the present view of this tribunal. Cf. Evelyn N. Moore, 1 T.C. 14, 16 (on appeal 2 C.C.A.); Chas. F. Roeser, 2 T.C. 298, 303. On the authority of the cited cases the deficiencies in tax for the years 1934, 1935, 1937, 1938 and 1940 are approved inasmuch as petitioner reserved substantially the same rights to dispose of the trust income. (For a full statement of the reserved rights see 42 B.T.A. 693et seq. and 122 Fed. (2d) 800et seq.) The remaining *375 issue, as stated above, is one of fact and of law. It involves the income of the trust for 1939 aggregating $34,736.46. We have determined that it was all distributed to the settlor, petitioner herein, from which it seems to follow that the deficiency in gift tax, determined by the respondent for that year, should be set aside. Such is our holding, for reasons which will now be stated. During the years after the creation of the trust and preceding the year 1939 petitioner (and an accountant employed by her and her husband) presumed that the income of the trust was not to be included in her gross income. The department ruled otherwise, which culminated in the controversy decided by us in Docket No. 97743. (42 B.T.A. 693.)After the determination of the deficiency in issue in that proceeding and before hearing and decision, petitioner and her husband, the latter then being the trustee, decided that inasmuch as the government was insisting that the income of the trust was her money, it should be paid over to her. Accordingly, on December 18, 1939, the husband, Paul G. Brown, as Trustee, drew a check on the Bankers Trust Co. of New York for $26,066.66 payable *376 to petitioner, and the proceeds of the check were deposited in her personal account on or about December 20, 1939. On December 27, 1939, a similar check in the amount of $8,669.80 payable to petitioner, was drawn, and the proceeds were deposited in her personal account on or about December 28, 1939. Respondent argues that the evidence is insufficient to support the conclusion which we have reached, insisting that since neither petitioner nor her husband testified we can "know nothing of what Mr. Brown thought he was doing" and "the natural presumption of fact would be that he had regard for his trust and complied with its terms." He therefore urges that we should conclude he accepted the gifts of the income in December of 1939 and immediately gave the same amount to his wife. The sole witness called by either party was an accountant, who had been employed by Brown and petitioner for a number of years. He testified that he had discussed the whole situation with Brown and "we said that as long as the government says it was her money we paid it over to her." "We had filed an appeal with the Board of Tax Appeals and that was pending." The accountant, who with his assistant kept the books *377 of the trust, wrote out the two checks, caused them to be signed by the trustee, and stated he had advised petitioner and the trustee that since "it was her money" she should "keep it." While the quantum of proof is not all that might be desired we believe it is sufficient to support the conclusion which has been reached that petitioner and her husband decided she should have the income since she was to be taxed upon it. This comports with the fact that the two checks were actually delivered to petitioner and the proceeds were deposited in her personal account. Respondent points out that there is no showing petitioner directed, in writing, any change in the beneficiaries of the trust; and, since the return states that the income for 1939 was distributed to Brown and since the trust indenture as then constituted provided it should be paid to him, that we should conclude he paid the money to himself "and then paid it to Mrs. Brown in contravention to the trust agreement." The argument is not wholly without substance; but we believe we are justified in concluding that the interested parties were simply taking a very practical view of an existing situation. The government, through its *378 responsible officers was saying, in effect: Despite the fact that petitioner had created a trust to which she had transferred valuable securities with directions that the income be paid to named beneficiaries and notwithstanding the fact that the income was so paid, all of it actually belonged to her - a view which was subsequently sustained by the courts. In that posture it is not unreasonable to conclude that the interested parties - and apparently petitioner and her husband were the only ones then having the slightest interest in the income and corpus - should decide to ignore the trust and allow the income to go to the one who would be required to pay the tax upon it. We have accordingly found as a fact that the 1939 income was all distributed to petitioner. It follows that she made no gift of the income for that year. We recognize that the statement made in the 1939 return militates somewhat against petitioner and no doubt justified the Commissioner in treating the income for that year as the income for the other years had been treated, thereby casting upon petitioner the burden of proving that his determination was erroneous. The explanation of this circumstance given at the *379 hearing, however, is convincing. Petitioner's counsel, when it became evident the representatives of the treasury department were claiming she had made taxable gifts in the years in issue, advisedly decided to file the several returns in 1941 for the purpose of avoiding imposition of a penalty in the event it should be held that a tax was due. He therefore secured from the accountant a statement of the income for each year and what purported to be a statement showing the recipients of it. Subsequent checking of the statement disclosed that it was wrong in one respect, i.e. as to the recipient of the 1939 income. The returns had then been filed and the instant proceeding was pending. The Commissioner chose not to set aside his determination when the situation was belatedly explained to him. But we now have all of the facts and believe that the statement was erroneous and unwittingly made. We have concluded and now hold that respondent erred in determining the deficiency in tax for the year 1939. Appropriate adjustment, occasioned by this holding, may be made in the deficiency for 1940. Decision will be entered under Rule 50.