COMMISSIONER OF INTERNAL REVE-
NUE v. WARNER.

No. 9909.

Circuit Court of Appeals, Ninth Circuit.

May 2, 1942.

914

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Gerald L. Wallace, William L. Cary, and Carlton Fox, Sp. Assts. to Atty. Gen., for petitioner.

Stanleigh P. Friedman, of New York City, and Lawrence A. Baker, of Washington, D. C. (Edward K. Hessberg, of New York City, and Herbert Freston, of Los Angeles, Cal., of counsel), for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

On May 26, 1932, four indentures (hereafter called indentures A, B, C and D), creating four trusts (hereafter called trusts A, B, C and D), were executed by three brothers (Jack L. Warner, Harry M. Warner and Albert Warner), their attorney (Stanleigh P. Friedman) and Central Hanover Bank & Trust Company (hereafter called Hanover). By indenture A, insurance policies on Jack's life were transferred by him to the trustees of trust A (Harry, Albert, Friedman and Hanover). These policies constituted the corpus of trust A. By indentures B, C and D, $6,000,000 of United States Government bonds owned equally by Jack, Harry and Albert were transferred by them to the trustees of trusts B, C and D (Jack, Harry, Albert, Friedman and Hanover), one-third ($2,000,000) thereof being so transferred by each indenture. These bonds constituted the corpus of trusts B, C and D. Jack's wife and child were beneficiaries of trust A; Jack and Jack's wife and child were beneficiaries of trust B; Harry's wife and children were beneficiaries of trust C; Albert and Albert's wife were beneficiaries of trust D.

Jack's wife and child received income from trusts A and B in 1932, 1933 and 1935. In his gift tax returns for 1932, 1933 and 1935, Jack reported, as gifts by him to his wife and child, the amounts received by them from trust A, excluding, however, the first $5,000 received by each of them in each of the years mentioned. Jack did not report as gifts, nor pay any tax on, the amounts which his wife and child received from trust B. The Commissioner of Internal Revenue held that these amounts also were gifts by Jack to his wife and child and were taxable to Jack and, no tax having been paid thereon, determined that there were deficiencies in respect of Jack's taxes for 1932, 1933 and 1935. Jack petitioned the Board of Tax Appeals for redetermination. In the redetermination proceeding, the Commissioner contended (1) that his determination with respect to trust B was correct and should be upheld, and (2) that the exclusions claimed by Jack with respect to trust A were improper and should be disallowed. The Board, rejecting both contentions of the Commissioner, decided[1] that there was no tax deficiency for any of the years mentioned, and that, for 1935, there was an overpayment. The Commissioner seeks reversal.

Section 501 of the Revenue Act of 1932[2] provided:

"(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual * * * of property by gift.

"(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible; * * *. The tax shall not apply to a transfer made on or before the date of the enactment of this Act.

"(c) The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a

[1] 42 B.T.A. 954.

[2] Act of June 6, 1932, c. 209, 47 Stat. 169–289, 26 U.S.C.A.Int.Rev.Acts, page 580.

transfer by the donor by gift of the property subject to such power, and any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of such income by gift."

Section 502, 26 U.S.C.A. Int.Rev.Acts, page 580, provided that the tax should be computed upon "net gifts." Subsection (a) of § 504, 26 U.S.C.A. Int.Rev.Acts, page 585, defined "net gifts" as "the total amount of gifts made during the calendar year," less certain deductions. Subsection (b) of § 504 provided: "In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year."

With respect to trust A, it was and is the Commissioner's contention that the transfer of insurance policies by Jack to the trustees was a transfer of a future interest in property, within the meaning of subsection (b) of § 504, and that, therefore, the exclusions of $5,000 each claimed by Jack in computing the total amounts which his wife and child received from trust A were improper and should be disallowed. Although, in the proceeding below, Jack disputed this contention and procured its rejection, he here concedes that the contention was correct (Ryerson v. United States, 312 U.S. 405, 61 S.Ct. 656, 85 L.Ed. 917;[3] Commissioner v. Boeing, 9 Cir., 123 F.2d 86), and that its rejection was error. This error, having been confessed, requires no further notice.

With respect to trust B, Jack contended and still contends that, since the transfer made by indenture B was prior to the enactment of the Revenue Act of 1932, the gift tax did not apply to that transfer—citing subsection (b) of § 501. It was and is, however, the Commissioner's contention that Jack was the donor of the property transferred by indenture B; that power to revest title to the property in Jack was vested in Jack, in conjunction with Harry and Friedman; that neither Harry nor Friedman had any substantial adverse interest in the disposition of the property or the income therefrom; and that, therefore, the payments of income to Jack's wife and child in 1932, 1933 and 1935 should be considered transfers by Jack of such income by gift—citing subsection (c) of § 501.

Jack contends that Albert, not Jack, was the donor of the property transferred by indenture B, and that, therefore, subsection (c) was inapplicable. It is true that, in indenture B, Albert was described and referred to as the grantor; but it does not follow, nor is it true, that Albert was the donor of the property transferred by indenture B. Indenture B was executed contemporaneously with indentures C and D. The same parties (Jack, Harry, Albert, Friedman and Hanover) executed all the indentures. The trusts thereby created (trusts B, C and D) were reciprocal trusts, the creation of each being, as the Board found, "dependent upon and in consideration of the creation of the other two."

Trust B was created for the benefit of Jack and Jack's wife and child, trust C for the benefit of Harry's wife and children, trust D for the benefit of Albert and Albert's wife. By indentures B, C and D, property[4] owned equally by Jack, Harry and Albert was transferred to the trustees of trusts B, C and D, one-third thereof being so transferred by each indenture—Jack's one-third by indenture C, Harry's one-third by indenture D and Albert's one-third by indenture B. Thus Jack, by transferring his property[5] to the trustees of trust C, procured (1) the transfer of Harry's property[6] to the trustees of trust D and (2) the transfer of Albert's property[7] to the trustees of trust B. Having thus furnished the consideration for the transfer of Albert's property to the trustees of trust B, Jack obviously was the donor of that property. Lehman v. Commissioner, 2 Cir., 109 F.2d 99, 100.

Indenture B provided that trust B might be revoked by Jack, Harry and Friedman, and that, upon such revocation, title to the property transferred by indenture B should vest in Jack. Thus the power to revest title to the property in Jack (the donor) was vested in Jack, in

---

[3] Affirming United States v. Ryerson, 7 Cir., 114 F.2d 150, which the Board refused to follow.

[4] Six million dollars of Government bonds.

[5] Two million dollars of Government bonds.

[6] Two million dollars of Government bonds.

[7] Two million dollars of Government bonds.

916

conjunction with Harry and Friedman. The Commissioner determined that neither Harry nor Friedman had any substantial adverse interest in the disposition of the property or the income therefrom. The Commissioner's determination was presumptively correct.[8] Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 294, 55 S.Ct. 158, 79 L.Ed. 367; Theatre Investment Co. v. Commissioner, 9 Cir., 119 F.2d 477, 479; J. K. McAlpine Land & Development Co. v. Commissioner, 9 Cir., 126 F.2d 163. The burden of proving it incorrect rested on Jack. Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 271, 50 S.Ct. 263, 74 L.Ed. 848; Welch v. Helvering, supra; Helvering v. Taylor, 293 U.S. 507, 512–516, 55 S.Ct. 287, 79 L.Ed. 623; Theatre Investment Co. v. Commissioner, supra; J. K. McAlpine Land & Development Co. v. Commissioner, supra.

The burden was not sustained. There is no evidence that either Harry or Friedman had any substantial adverse interest in the disposition of the property of trust B or the income therefrom. True, the evidence shows that Harry and Friedman were trustees of trust B, but that did not give them or either of them a substantial adverse interest in the disposition of the trust property or the income therefrom. Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109; Morton v. Commissioner, 7 Cir., 109 F.2d 47; Commissioner v. Caspersen, 3 Cir., 119 F.2d 94. Nor did the fact that Jack and Harry were brothers give Harry such an interest. Compare Fulham v. Commissioner, 1 Cir., 110 F.2d 916; Commissioner v. Caspersen, supra.

Since the power to revest title to the trust property was vested in Jack (the donor), in conjunction with persons having no substantial adverse interest in the property or the income therefrom, and since that power, so far as the record shows, has not been relinquished or terminated, we conclude that there was no completed gift of the property (the corpus of trust B), but that the payments of income therefrom to Jack's wife and child were transfers by Jack of such income by gift. Subsection (c), § 501, supra; Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20; Rasquin v. Humphreys, 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77.

The payments of income to Jack's wife and child in 1932 and 1933 were made while subsection (c) was in effect. The payments in 1935 were made after subsection (c) was repealed.[9] The payments made in 1935, as well as those made in 1932 and 1933, must nevertheless be considered transfers by Jack by gift to his wife and child; for subsection (c) was merely declaratory of what was and is the law without specific legislation. Burnet v. Guggenheim, supra. Because Burnet v. Guggenheim showed such legislation to be unnecessary, subsection (c) was repealed. H.R. No. 704, 73d Cong., 2d Sess., p. 40; Sen.Rep. No. 558, 73d Cong., 2d Sess., p. 50; Estate of Sanford v. Commissioner, supra; Rasquin v. Humphreys, supra.

Decision reversed.

---

[8] That is to say, the Commissioner's determination was to be accepted as correct unless and until evidence of its incorrectness was adduced. J. M. Perry & Co. v. Commissioner, 9 Cir., 120 F.2d 123, 124.

[9] By § 511 of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev.Acts, page 769.