**COMMISSIONER OF INTERNAL REVENUE v. HAGER'S ESTATE.**

**No. 9444.**

United States Court of Appeals
Third Circuit.

Argued Feb. 6, 1948.

Decided Feb. 23, 1949.

---

Irving I. Axelrad, of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., and Helen R. Carloss, A. F. Prescott, and Newton K. Fox, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Guy W. Gordon, of New York City (George A. Reiss, of New York City, on the brief), for respondents.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the liability of the estate of William M. Hager for asserted estate taxes under § 811(d) (2) of the Internal Revenue Code.[1] The Tax Court decided in favor of the taxpayer and the Commissioner's appeal has asked reversal. This we are going to grant. We held the case after submission because it was indicated to us that the decision of the pending case of Commissioner v. Estate of Church[2] would determine this one. It did not, but its bearing will be noted in the course of the discussion.

The question which we must decide is whether under the provisions of the trusts presently to be described the enjoyment was subject to change at the date of the grantor's death "through the exercise of a power * * * to alter, amend or revoke * * *."[3] If it was, the Tax Court was wrong and the Commissioner is entitled to the tax claimed.

The five trusts in question were set up in 1924. The decedent and his wife each contributed one half of the original corpus in certain shares of corporate stock. The children and grandchildren named as beneficiaries were given life estates together with powers to appoint the remainders by will. There were gifts over in default of appointment. The trusts were irrevocable and the trustee retained no power to terminate them prior to the designated period for their expiration, which was the death of the grantor's son.

The decedent was named trustee under all the trusts, and they were administered as a unit. He retained very wide powers, it quite evidently being the intention to set up the type of trust in which he hoped by the exercise of business judgment to en-

---

[1] "§ 811.  Gross estate
"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
* * * * * *
"(d)  Revocable transfers
* * * * * *
"(2)  Transfers on or prior to June 22, 1936.  To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *."  26 U.S.C.A. § 811.
[2] 335 U.S. 632, 69 S.Ct. 322, 337.
[3] 26 U.S.C.A. § 811(d) (2).

large the trust estate for members of his family. In particular, he was authorized, by paragraph 5 of each trust indenture, to determine, as it pleased him, whether gains realized from the sale of securities in the trusts should be treated as income or retained as part of the corpus.[4] By paragraph 8 he could pay out or accumulate income at his sole discretion, and could treat the accumulations as corpus or income.[5] The Commissioner relies upon these paragraphs to show that the decedent, when he died, had in his hands the power to alter or amend.

The corpus of the estate increased in value and at the time of the decedent's death was considerably greater in dollar value than it was on the date created. The Commissioner, by stipulation, is claiming only half of the total value of the trusts. In other words, he is not claiming estate tax on the portion contributed to the trusts by Mrs. Hager, the decedent's wife, and the increment on that portion.

Except in one particular, Commissioner v. Holmes' Estate, 1945, 326 U.S. 480, 66 S.Ct. 257, 260, 90 L.Ed. 228, is precisely in point. The difference between that case and this one is that in the Holmes trust the settlor had the power to terminate the trust before the date stipulated for expiration. The court's problem was to determine whether the power to "terminate" was a power to "alter or amend." It was held to be so in language which we think is pretty strongly persuasive in our situation here. The court said: "It seems obvious that one who has the power to terminate contingencies upon which the right of enjoyment is staked, so as to make certain that a beneficiary will have it who may never come into it if the power is not exercised, has power which affects not only the time of enjoyment but also the person or persons who may enjoy the donation."

█ In this case our question is whether the power which the settlor retained is enough to be called the power to "alter or amend." He could allocate gains to income, so the life tenants would get them, or to corpus, so that the remaindermen would get them. This we think is a very substantial power. So, too, is the power to determine whether or not the life tenants are to get anything at all. It is, of course, well settled that the power to alter or amend does not have to extend to everybody in the world. It is sufficient if the power to allocate exists as among those named as beneficiaries or possible beneficiaries of a trust.[6] We think there is no doubt, therefore, that as to the increase in value of the trusts at the date of the settlor's death, he had the power to alter or amend as to (1) the increments to corpus which had come by the profitable buying and selling of securities, and (2) income of the life tenant which the settlor-trustee could withhold or pay over at his discretion.

---

4 "(5) As between the beneficiary of this trust and those entitled to the remainder hereunder, any increment, however accruing, to the value of any investment constituting a part of the principal of the trust shall be for the benefit of those entitled to the remainder except that if any such security, to the value of which there shall be any increment, by way of increase of market price or otherwise, shall be sold or otherwise disposed of during the period of the trust, such increment, in the discretion of the Trustee, may be either treated as income to be disposed of in accordance with the terms hereof, or be retained as a part of the corpus of the trust."

5 "(8) The Trustee may from time to time pay over to our said son, or expend for his benefit, so much of the income from the trust estate as in the sole judgment of the Trustee it shall be advisable so to do. So much of such income as shall not be so paid or expended shall be accumulated as a part of the trust estate, but at any time and from time to time after there has been any such accumulation of income, the Trustee may either pay the whole or any part thereof to our said son or expend it for his benefit—it being the intent that the income from the trust estate not actually paid over to or expended for the benefit of our said son shall not become irrevocably a part of the corpus of such estate, but may thereafter at any time, and from time to time, be by the Trustee either paid over to him or expended for his benefit. * * * "

6 See authorities collected in Industrial Trust Co. v. Commissioner, 1 Cir., 1947, 165 F.2d 142, 1 A.L.R.2d 144.

Is the taxable interest limited to that just stated or does it include the one half the value of the total estates, as the Commissioner claims? This question the court did not have in the Holmes case. There the power to alter or amend by terminating the trust certainly cut across the entire corpus. That is not quite this case. Here the trustee, as explained above, could withhold income from a life tenant, reassign it to corpus and then assign it out again. He could allocate profits from buying and selling trust securities to either corpus or income. He could buy speculative securities if he chose. He was expressly empowered to exercise in dealing with the trust estates "each and every right that might be exercised by one holding the same as his individual property." But we take it that in spite of this clause he could not wilfully eliminate the interests of the remaindermen.

■ Our legal question, therefore, is whether such a limitation on the power of a grantor has the effect of limiting the power of the United States to levy its estate tax based on the value of the whole trust. The First Circuit has assumed so in a recent dictum. Industrial Trust Company v. Commissioner, 1 Cir., 1947, 165 F.2d 142, 146, 1 A.L.R.2d 144. In Commissioner v. Bridgeport City Trust Co., 2 Cir., 1941, 124 F.2d 48, the court upheld a claim by the Commissioner to the inclusion of the income beneficiaries' interest in a trust where a settlor had reserved to himself the power to reallocate the disposition of the income. It is to be noted, however, that the Commissioner got, by this holding, all that he had claimed. Therefore, the question whether the value of the entire estate could have been subject to the estate tax was not before the court. And in Helvering v. Proctor, 2 Cir., 1944, 140 F.2d 87, 155 A.L.R. 845, the Second Circuit held that where the settlor had reserved an estate for life with remainders over, the principal was not includible in the gross estate for estate tax purposes. The discussion by the court, of course, turned around May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, and its children and collateral relatives. Since May v. Heiner has now disappeared through the decisions of the Supreme Court in Commissioner v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 337, and Estate of Spiegel v. Commissioner, 335 U.S. 701, 69 S.Ct. 301, 337, any structure based upon May v. Heiner has, obviously, lost its foundation. Our conclusion is that the grantor of these trusts retained to himself as trustee a sufficient power to alter or amend to affect very substantially the interests of the life tenants and the remaindermen, even though he could not, unless he lost all the money of the trusts by unfortunate investments, completely eliminate the remaindermen. He could certainly affect them by many of the things he kept power in himself to do. We think there is enough retained to bring the grantor within the wording of the statute and that the Commissioner's contention, therefore, must be upheld.

The decision of the Tax Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.