## TOBIN v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### No. 12884.

United States Court of Appeals
Fifth Circuit.
July 19, 1950.

Sidney L. Herold, Shreveport, La., Le-Roy G. Denman, and LeRoy G. Denman, Jr., San Antonio, Tex., for petitioners.

S. Dee Hanson, L. W. Post, Spec. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, W. Herdman Schwatka, Sp. Atty., Washington, D. C., for respondents.

Before HUTCHESON, Chief Judge, and McCORD and RUSSELL, Circuit Judges.

McCORD, Circuit Judge.

These appeals involve federal income taxes for the years 1940 to 1943, inclusive, and are taken from decisions of the Tax Court entered February 28, 1949. See 11 T.C. 928. By order of this court, the cases have been consolidated for the purpose of printing the record, briefs, and for hearing and disposition upon this review.

The principal question presented is whether the net income of four trusts created by taxpayers is taxable to them as community income under Section 22(a) or 167 of the Internal Revenue Code. Title 26, U.S.C.A. §§ 22(a) and 167.

The material facts are without dispute. Briefly stated, they reveal that taxpayers are husband and wife residing in the state of Texas. During the tax years involved they filed separate returns on the community property basis.

Taxpayers were married in 1926. They have one son, Robert Batts Tobin, who was born on March 12, 1934. The husband, Edgar Tobin, had been married before and had a daughter by his previous marriage.

His father had died sometime before 1935, the year the four trusts in question were created, but his mother, Ethel Murphy Tobin, was still living at that time. His parents had always been people of small financial means.

Margaret Batts Tobin was the daughter of Judge Robert L. Batts and Harriet Fiquet Batts of Austin, Texas. Judge Batts had been a man of financial means, but during the depression in 1929 had lost his fortune and was left with heavy debts.

During the year 1935 Tobin and his wife, having in mind his family's financial insecurity and her family's financial reverses during the depression, decided to try to protect, as far as possible, their loved ones against financial want. With this end in view, in that year they created from their community property eight trusts, of which five were created by Tobin out of his one-half of the community estate, and three by his wife out of her one-half of the community property.

Without reviewing at length the various provisions of the separate trust instruments, it is sufficient to observe that each is specifically declared to be irrevocable; that the corpus of each of the trusts consisted principally of stock in various companies and a certain promissory note; that each trust agreement made provision for a corporate trustee and an advisory committee composed of three individuals; and that this so-called Advisory Committee was vested under the terms of the trust instruments with certain definite powers, including the right to remove the Trustee with or without cause, and the authority to direct the Trustee whether or not to distribute the income as it accumulated in each trust.[1]

The Commissioner determined after an investigation and audit by a Revenue Agent that the net income of each of the eight trusts for the tax years involved was taxable to taxpayers as community income. Deficiency assessments were thereupon levied against taxpayers individually for each of the years 1940, 1941 and 1943, on the theory that under Section 22(a) of the Revenue Code, and the rule laid down in

[1]. The text of each of the eight trust instruments is well summarized in the opinion of the Tax Court, 11 T.C. 928.

Helvering v. Clifford, 309 U.S. 331, 60 S. Ct. 554, 84 L.Ed. 788, the income of each of the eight trusts was legally the income of taxpayers, and hence taxable to them. The Tax Court, however, reversed the determination of the Commissioner as to four of the trusts, but on authority of the doctrine of "reciprocal trusts" as set forth in the case of Lehman v. Commissioner, 2 Cir., 109 F.2d 99, sustained his ruling with respect to the four trusts involved on this appeal. See 11 T.C. 928.

We are of opinion the Tax Court erred in holding that the net income from the four trusts here involved is taxable to taxpayers as community income. Commissioner v. Branch, 1 Cir., 114 F.2d 985; Hall v. Commissioner, 10 Cir., 150 F.2d 304; Cushman v. Commissioner, 2 Cir., 153 F.2d 510; Commissioner v. McLean, 5 Cir., 127 F.2d 942; Leuders' Estate, 3 Cir., 164 F.2d 128; Commissioner v. Porter, 5 Cir., 148 F. 2d 567; Commissioner v. Hinds, 5 Cir., 180 F.2d 930.

We do not consider the doctrine of "reciprocal trusts", as enunciated in Lehman v. Commissioner, 2 Cir., 109 F.2d 99, applicable or controlling in favor of the Commissioner here. In so holding, and in resorting to the strained fiction of reciprocal or cross-trusts in order to tax the trust income to these taxpayers, we believe the Tax Court has disregarded the plain language of the trust agreements. Under the wording of these trust instruments, the Lehman case in no wise requires a holding that the trusts were reciprocal, or that under Section 167 (a) (2) of the Revenue Code the trust income could have been distributed to taxpayers as grantors. See Welch v. Commissioner, 8 T.C. 1139, 1147.

It is without dispute that the income from each of these four trusts has been reported annually as trust income, and that all taxes due thereon have been paid. It is not even suggested that the trusts were originally created in bad faith, or with federal tax consequences in mind. More-over, during the tax years here involved, no part of this trust income has ever been distributed to taxpayers, and it appears from the pleadings that taxpayer, Edgar Tobin, has relinquished and renounced any right to share in the trust income. The trust instruments reveal that no beneficiary ever had the power to demand payment of any part of the trust income. To the contrary, it appears that the Trustee was without power to distribute any of such income without the previous advice and direction of the Advisory Committee provided for in each trust agreement.

The express purpose of each of these trusts was to provide for the financial protection of loved ones against misfortune and their own improvidence. It becomes manifest that if undistributed income held in an irrevocable trust, as here, solely for the protection of certain beneficiaries against financial want, is community property and held subject to community debts, that such holding would clearly defeat the express purpose for which the trusts were originally created. Cf. Commissioner v. Porter, 5 Cir., 148 F.2d 567; Commissioner v. Hinds, 5 Cir., 180 F.2d 930.

We consider it unnecessary in view of our holding to discuss or pass upon the other issues presented.

The decision of the Tax Court is reversed and remanded with direction to enter judgment in favor of taxpayers.

Reversed and remanded with direction.

RUSSELL, Circuit Judge, dissenting.

I conclude that the result reached by the Tax Court in its determination with reference to the four trusts is correct, though some of the reasons which induced its conclusions could have been more clearly stated. Under the majority view, there is no occasion to reach the question of the renunciation filed by the husband, and any discussion by me would be useless at this time. I dissent from the judgment of reversal.