ESTATE OF MYRTLE H. NEWBERRY, DECEASED, JOHN J. NEWBERRY, JR., EDGAR A. NEWBERRY, WALTER C. SCHULZ AND JOHN J. NEWBERRY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN J. NEWBERRY TRUST NO. 1, JOHN J. NEWBERRY TRUST NO. 2, JOHN J. NEWBERRY TRUST NO. 3 AND JOHN J. NEWBERRY TRUST NO. 4, WALTER C. BAKER AND THOMAS L. ZIMMERMAN, TRUSTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 19480, 20519. Promulgated October 5, 1951.

*Montgomery B. Angell, Esq.,* for the petitioners.
*Francis X. Gallagher, Esq.,* for the respondent.

598

OPINION.

DISNEY, *Judge:* On July 6, 1934, the decedent as the named grantor executed two instruments of trust, one in favor of her daughter and the other in favor of her son.   On the same day her husband as the named grantor executed two instruments of trust, one in favor of his daughter and the other in favor of his son.   Each did the same again on December 26, 1935.   The language of the eight trusts was substantially the same, save for the differences in names and certain immaterial variations.   The corpus of the trusts as originally created consisted primarily of an equal number of shares of stock of the John J. Newberry Co.   Each of the eight trust instruments named the decedent and her husband as trustees.   As originally drawn, the trust instruments provided, in accordance with certain conditions, for a contingent life estate in the net income to be paid to the named grantor's spouse.   Paragraph Fourteenth of each trust instrument, as originally drawn, provided that the spouse of the named grantor as "trustee" was given the power to alter, amend or revoke the instrument in whole or in part, including the right to change the beneficiaries.

The respondent argues that trusts which are subject to the grantor's power either to change the beneficiaries or shift their interests because of a reserve power to alter or amend are includible in the gross estate of the grantor under section 811 (d) (2), Internal Revenue Code.   The decedent was not the named grantor of the trusts here

involved but the respondent argues that the decedent and her husband executed their respective trusts in consideration of the other's doing so, and each must be regarded as the true grantor of the other's instruments. *Lehman* v. *Commissioner*, 109 F. 2d 99, affirming 39 B. T. A. 17, certiorari denied 310 U. S. 637.

As to the provisions for contingent life estates the petitioners contend that since these were eliminated, by the amendments in 1943, before death of the decedent, they are not to be considered here. The respondent apparently agrees for he does not touch the point or, in his brief filed after receipt of that of petitioners, reply to petitioners' view on the matter. In any event, we agree with the petitioners in that respect. Obviously "at the date of his [her] death" in the words of section 811 (d) (2), Internal Revenue Code, there were no contingent life estates in existence. We do not however agree with the petitioners that only the date of death is to be considered in determining whether there was reciprocity in the trusts. The history of the trusts from the beginning must be examined and, indeed, the petitioners do so, in contending that decedent's husband would have executed his trust regardless as to whether decedent executed another.

Since we conclude that, except for study of the problem whether there was reciprocity of trusts, the date of death is crucial, it follows that in view of the amendments made on May 31, 1943, the only matter left for consideration is whether there lies in the provision, common to the trusts of decedent and her husband, that Myrtle H. Newberry [in her husband's trust as amended] has the right to change beneficiaries (limited to her descendants, their spouses or donees, under section 811 (d) of the 1939 Code), a situation which, under section 811 (d) (2) of the Revenue Code, requires inclusion of the value of trust corpus in decedent's estate.

The petitioners contend that the doctrine of reciprocal trusts rests upon the principle that the decedent must have parted with, and received from the other trust, a beneficial property right as an inducement for the creation of the cross trusts, and the power to change beneficiaries, petitioners say, is not such beneficial property right. One simple answer to this proposition is that the decedent parted with her interest in the shares of stock contributed to the trusts created naming her as grantor. It is clear that she parted with this much of her estate, for there was included in her trust instruments a provision that such corpus could not be revested in her. Within the same arguments, petitioners go further to contend that each spouse must part with the same amount of property, and in developing this point to their ultimate conclusion eventually get to the view that the power received must be equal to the property right given up. Petitioners cite *Cole's Estate* v. *Commissioner*, 140 F. 2d 636, and certain dictum in *Hanauer's*

*Estate* v. *Commissioner*, 149 F. 2d 857, as supporting such a conclusion. As we read these two cases, the meaning appears clear that they stand only for the proposition that to be reciprocal trusts the amount of any property contributed, by the respective grantors, must be of equal amount and if not equal then the amount includible in the decedent's gross estate can not exceed the amount contributed in creating the smaller trust; in other words, the reciprocal trust doctrine extends only to equal amounts contributed to the creation of the trusts. We find no support in the cited cases for petitioners' theory that the power received by the decedent in trust must be a property right of ascertainable value, or that the reciprocal powers here, to change beneficiaries, are not sufficient to bring this matter within the doctrine of reciprocal trusts. Moreover, we have in principle otherwise decided. In *Werner A. Wieboldt*, 5 T. C. 946, much as here, a husband and wife each created a trust naming their children as beneficiaries, with power in the other to alter, amend or terminate the trust and to direct the trustee as to trust properties. Essentially the same argument was made as here, that is, that the reciprocal powers were non-beneficial to the holders. We said:

* * * The significant factor is that each settlor gave the other the right to alter, amend, or terminate the trust. Such power, though not exercisable for the benefit of the grantor, otherwise seems to be a general one. However, it is argued by petitioners that it was exercisable only in a fiduciary capacity and not to the advantage or benefit of the holder. Even if this be so, it remains that the power did carry with it, at least, the right to increase or diminish the beneficial interests of the respective named beneficiaries. As a matter of fact, the respective indentures were altered in that respect. If either grantor had retained such power, along with the right to direct the trustee with respect to the sale, retention, or reinvestment of trust property, although as a trustee, he would have been subject to tax on the income under *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491. Certainly the effect of that case may not be circumvented by a simple expedient on the part of a husband and wife of exchanging the rights with each other.

While it may be true that neither petitioner had any beneficial interest in either of the trusts and that each of them was motivated to create a trust by a desire to provide for his (her) children, the power and control over the distribution of income and principal and the power to direct the management of the trust properties, although lost to each under his own indenture, were regained under the indenture of the other. In the circumstances of this case, it might well be that such rights were the most satisfying ones to the petitioners. Certainly they are among the important attributes of property ownership.

The *Wieboldt* case was, of course, one involving income, not estate tax. But the principle of reciprocal trusts applies equally to estate tax and income tax. *Margaret Batts Tobin*, 11 T. C. 928 (945), reversed in part 183 F. 2d 919, on the facts, but not on the above statement. Clearly there is not in this respect real distinction in the doc-

trine in the difference between estate tax and income tax. It has been applied in case of gift tax. *Commissioner* v. *Warner*, 127 F. 2d 913.

The essential consideration here is that, if the power to change beneficiaries had been reserved in decedent's own trust, there could be no doubt that the case would fall under section 811 (d) (2) and, therefore, the trust corpus fall within gross estate; and the result is the same if there are crossed trusts, exchanging the same power, so that there is in substance transfer by the decedent. *Lehman* v. *Commissioner*, *supra*. As we said, in an income tax case involving reciprocal trusts: "What petitioner lost by the transfer to the trust created by her for Smith's benefit she recovered as beneficiary of Smith's trust." *Purdon Smith Whiteley*, 42 B. T. A. 316 (321). Under such principle it appears clear that it is not necessary that the reciprocated powers be beneficial, or constitute a *quid pro quo* in the sense of equivalency in value, as petitioners contend. In fact, there appears here clear equivalency, in the fact that the crossed powers were the same, involving properties of identical value, that is, equal amounts of the same stock.

The petitioners also argue that the transfers here in question have been held to be outright gifts by this Court in *John J. Newberry and Myrtle H. Newberry*, 39 B. T. A. 1123. Even if the point is of any consequence, here, it does not appear that either party to that case contended that the trusts created by the decedent and her husband were outright gifts, thereby making such an issue before the Court. As we read that case, the only question there decided was the fair market value on the date of each gift of the block of John J. Newberry Co. stock which was the subject of that gift. The transfers may have been gifts and still not settle the estate question here to be decided. See section 813 (a), Internal Revenue Code. Petitioners, on brief, also contend that the decedent and her husband intended to make outright gifts to their children. Such a contention is not borne out by the decedent's and her husband's actions in the creation of the trusts. Each was given a significant power in the other's trust. The power in the original instrument was set out in paragraph Fourteenth, wherein the decedent as "trustee" was given the power to alter, amend, or revoke the instrument in whole or in part including the right to change the beneficiaries. Also, from later action on the part of the decedent and her husband, it is apparent that it was the intention of the grantor that this provision was to include the power to vest the corpus of the trusts in the decedent, for, at a later date, on May 31, 1943, the paragraph was amended in such a way that the decedent's power was limited to changing the beneficiaries to either the descendants of Myrtle H. Newberry (the decedent herein), spouses of such descendants or donees described in section 812 (d) of the

Revenue Act of 1939. The insertion of such a limitation by an amendment leads us to believe that before the amendment, it was the intention of the decedent and her husband that the corpus of the trusts could be vested in the named grantor's spouse, at the discretion of such spouse. Paragraph Fourteenth as it originally appeared was inserted because the named beneficiaries were very young, in school and neither the decedent nor her husband knew what kind of mate they (the beneficiaries) might choose. The significance of the amendment to paragraph Fourteenth is magnified because they (the decedent and her husband) did not execute it until May 31, 1943, a date at which time the named beneficiaries (the decedent's and her husband's children) were both married and both had children (one each).

Significant also is the fact that the respective pairs of trusts, in point of time, were executed on the same day and were similar in terms. The decedent and her husband on six different dates executed 16 pairs of practically identical amendments, or a total of 32 amendments to or partial revocations of the trust instruments. It is evident that the decedent and her husband were acting as a unit.

As was said in *Joseph Nussbaum*, 19 B. T. A. 868 (871), and reiterated in *Ernest J. Keefe*, 15 T. C. 947 (953), "The situation must be viewed as a whole." Viewing the situation as a whole it is apparent that outright gifts were not made and that the trust instruments were merely part of an interdependent arrangement whereby neither the decedent nor her husband would lose control of the amount of stock of the John J. Newberry Co. transferred to the trusts until they saw fit to do so.

The petitioners next argue that the named grantor's spouse must have been the generating force in initiating the creation of the cross trust in order to justify its inclusion in the decedent's gross estate. They argue that this is purely a factual question and that courts have recognized and applied this limitation upon the doctrine of reciprocal trusts, citing *Hanauer's Estate* v. *Commissioner, supra; In re Lueders' Estate* v. *Commissioner*, 164 F. 2d 128; *Marrs McLean*, 41 B. T. A. 1266; affirmed on this point 127 F. 2d 942. We find nothing in the *Hanauer* case that gives substance to the petitioners' argument. The circuit court of appeals there found, as the Tax Court had previously found, that the decedent and his wife had each created his or her trust in consideration of the other. This the court thought was sufficient to justify the application of the reciprocal trust doctrine and therefore cause the trust to be included in the gross estate of the decedent. As we read the case, it does not establish a necessary prerequisite for inclusion of a trust under the reciprocal trust doctrine, nor does it give reason to any theory that the trusts in the instant case are free from being within such doctrine. In fact, the facts in the *Hanauer's Estate*

case, under which the court found such reciprocity of trusts as to cause inclusion of trust property in gross estate, are remarkably parallel to those here involved; for it is there, in substance, recited that the wife when informed of her husband's plans for his trust decided that if such plan was good enough for him it was good enough for her; and here the decedent said that "if John thought it was a good thing to create these trusts for the children, she did too. * * * She wanted to create the same type of trusts." That mental attitude was relied on in the cited case; and we think it important here in the decision that there was reciprocity.

In *Orvis* v. *Higgins*, 180 F. 2d 537, the court considered testimony generally similar to that here as to independence of action of husband and wife, but reversed and found reciprocity of trusts, saying, as to the reasons given by husband and wife:

* * * Not only were those respective reasons strikingly similar but none of them sufficed or purported to explain why each of the trusts set up a life estate; nor did the expression of those reasons at all negative the existence of an intent to make the trusts reciprocal. * * *

Here, too, we do not think the evidence relied on by petitioners explains why each set up the provisions which were reciprocal. The *Lueders' Estate* case, above mentioned, is distinguishable in that it was there stipulated that the trust created by the decedent's husband was on its face a *prima facie* gift. The contrary is true in the instant case. As above noted, we have concluded that the trusts here involved were not intended to be outright gifts to the two children. Petitioners so argue, but, as above seen, we are unable to reach that conclusion. The power given to the decedent in the trusts convinces us that the trusts were not intended to be outright gifts. The *Marrs McLean* case involved gift taxes. There the taxpayer presented his case on a stipulation to which was attached copies of the transfers in trust. Neither the transfers nor the stipulation contained any statement that the transfer by the taxpayer was in consideration of the transfer by his wife or vice versa. Taxpayer was attempting to prove that trusts executed simultaneously by husband and wife were made in consideration of each other. The court there said:

* * * Taxpayer may not by merely pointing to the fact that; the trusts were created at the same time; were in equal amounts; and contained reciprocal provisions, claim a discharge of the burden resting on him to show that the transfers were made in consideration of each other. * * *

In other words, there the taxpayer failed to prove his case. It appears that petitioners, in the instant case, would have us use that case as an authority for the principle that if consideration is not proved then the trust agreements cannot be considered reciprocal but such a conclusion, in our view, would merely be relieving the petitioners of the burden of

proving their case. It is clear that the case does not stand for the principle that the named grantor's spouse must have been the generating force in initiating the creation of the cross trust in order to justify its inclusion in the decedent's gross estate. Petitioner also cites *Estate of Lindsay*, 2 T. C. 174, as an authority for the principle that the execution of the trusts on the same day and in similar terms is of no materiality when the record shows that outright gifts were intended to be made and were made. The petitioners argue that the idea of creating the trusts in the *Lindsay* case (trusts were created by the husband and wife) did not originate with either spouse but with the son of the grantors and contend that John J. Newberry's brother stands in a similar position in the instant case in that the idea of creating the trusts originated with him (the brother). At least one material difference makes the *Lindsay* case inapplicable, for in the *Lindsay* case the son conferred independently with his mother and father, the named grantors, while in the instant case John J. Newberry's brother conferred only with John J. Newberry, the husband, and John J. Newberry discussed the plan with his wife (decedent herein). In the *Lindsay* case the respondent at trial disavowed intent to depend on the reciprocal trust theory, and suggested it only on brief. We found independence of the two trusts on all the facts. Further, as above seen, the record here does not justify our finding the trusts constituted outright gifts. In our view, the decedent does not need to be the generating force in creating the cross trusts in order to justify their inclusion in her gross estate, for in reality it takes trusts created by two individuals (e. g., trusts created by both husband and wife) to give rise to the reciprocal trust arrangement and it matters not which was the generating force or merely acquiesced in the arrangement if, as here, both trusts are equally a part of the reciprocal arrangement. In *Cole's Estate, supra*, the court in concluding that there was reciprocity in trusts, despite the argument as to motive, said:

\* \* \* Further, "\* \* \* with few exceptions the law attaches legal consequences to what parties do, quite independently of their private purpose or intent." Richardson v. Smith, 2 Cir., 102 F. 2d 697, 699, 125 A. L. R. 774. \* \* \*

The parties here involved did create trusts with reciprocal provisions.

The petitioners' final argument is that where the testimony of record contains unrebutted evidence negativing a state of facts on which the respondent's case must be based, mere speculation will not be allowed to do duty for probative facts. But the testimony on the point is by no means the whole record. It is our view that under all of the evidence, and not merely the testimony petitioners rely on, the trusts in question were a part of an interdependent reciprocal arrangement and that the decedent in substance and reality was the grantor of the trust in which her husband was the named grantor. Having concluded that the de-

cedent was in substance the grantor, it follows that the value of the corpus of the trusts is includible in her gross estate under the provisions of section 811 (d) (2), Internal Revenue Code, because it was property in which she retained the power, for life, to change the beneficiaries. *Porter* v. *Commissioner*, 288 U. S. 436; *Chickering* v. *Commissioner*, 118 F. 2d 254, certiorari denied 314 U. S. 636; *Commissioner* v. *Hager's Estate*, 173 F. 2d 613; *Estate of Grace D. Sinclaire*, 13 T. C. 742.

The above conclusion requires us to answer the second question propounded: Whether certain income from the trust corpus, accumulated "for the benefit of" Myrtle Virginia Newberry [or John J., Jr.] until she arrived at 30 years of age, at which time the trustees were to pay it to her, vested, as the petitioners argue, at the time of accumulation in her, though it was not to be paid until later, so that the decedent having died before Myrtle Virginia became 30 years of age, decedent died with no such power over such accumulated income as to cause it to be included in gross estate. The respondent argues, *contra*, in substance, that the decedent at the time of her death had power "to change the beneficiaries" so that the accumulated income is includible in decedent's gross estate. The executors, acting under section 3 : 7–77 of the Statutes of New Jersey, petitioned the Orphans' Court to construe the trust agreements and to enter a decree determining whether or not the accumulated income is corpus or whether it vested in the beneficiary, and whether the decedent had power to transfer accumulated income prior to her death, to others than the named beneficiary; and upon such petition they secured an order declaring that the accumulated income vested in the beneficiary and that the decedent had no power to change the beneficial enjoyment thereof. Petitioners urge that such order is conclusive here. The respondent urges that the Orphans' Court had no jurisdiction to construe a trust. After examination of the question and the cases cited by both parties, we conclude that the Orphans' Court did not have jurisdiction to construe the trust, and that that power is reserved in New Jersey to the Chancery Court. Though the petitioners argue that the application was made by executors, not trustees, and that under the New Jersey statute above mentioned "any executor * * * may * * * apply by petition to the orphans' court of the county wherein letters were granted to him, for its advice and direction in regard to any matter or thing in connection with the administration of his trust" upon which the Orphans' Court may make an order, we note that in the case of *In re Roth's Estate*, 52 A. 2d 811, the matter before the court came on upon the application of executors, one of whom was also entitled to the net income of the testamentary trust and the other of whom was a trustee who asked the Orphans' Court

for an order "instructing the said executors in the premises." The court held that the Orphans' Court "lacked jurisdiction to instruct the Roth trustees how they should execute their trust and therefore the decree must be set aside." It was stated that the legislature could not impair the jurisdiction of chancery by giving another tribunal jurisdiction of a subject matter which at the time of the adoption of the state constitution belonged exclusively to chancery, and *In re McConnell's Estate*, 149 A. 352, is cited. The *McConnell* case involved a petition to establish a resulting trust and the Orphans' Court was held to be without jurisdiction. We note that the court said that the Orphans' Court had power to decide any question incidental to the termination of any issue over which it has jurisdiction, and said that it might well be that in the determination of an account the statutory court might have passed upon the question, but that the petition put in issue but one question, whether a certain party held property in trust or in his own right. We, therefore, again notice that in the *Roth* case the original petition by the person entitled to net income of the trusts prayed for opening of decrees allowing accounts, and the other petition by the other trustee and executor merely asked for instructions. Yet the court held there was no jurisdiction to give such instructions. We conclude and hold that the Orphans' Court of Bergen County, New Jersey, was without jurisdiction to construe the trust before us (which was not a testamentary trust) and that, therefore, its decree of order is not conclusive in this matter.

The petitioners further argue, however, that as a matter of law the income when accumulated vested immediately in decedent's daughter, the beneficiary thereof, and thus was not subject at the time of decedent's death to her power under the trust as amended to change the beneficiaries. The cases cited fail to lay down such rule as to *inter vivos* trusts and are, in substance, merely to the effect that in the various circumstances involving those cases the testamentary provisions were with intent that the income vest in the beneficiary, and that there was vesting at death of the decedent. On the facts before us, in this case, of *inter vivos* trusts, we think the opposite conclusion is necessary. In the first place, the sixth paragraph of the trust as amended provided for accumulation of income "for the benefit of" Myrtle Virginia Newberry (Leach) [or her brother] and not that it should belong to her, or equivalent expression. It was merely to be accumulated *for her benefit*. In other words, she was a beneficiary. But paragraph Fourteenth as amended gave the decedent, individually, and she at the time of her death possessed, the power to "change the beneficiaries" from which, under all of the evidence here, it follows that intent and effect was that the income when accumulated did not vest in the child but was subject to change by the decedent—just as in testamentary trusts in the cases cited the testator could of

course revoke until death. It was clearly, we think, the intent of the reciprocal trusts here to keep control over the income until the child became 30 years of age. The decedent's husband testified, in substance, that the children were young, that he and his wife wished to protect their interests, that that was their main interest in life, that the purpose was to provide against unforeseen contingencies, that he and his wife were looking forward to the time when the children might be married and they wanted to "protect our interest in the event that they might marry some schemer or some ne'er-do-well, and that was the purpose of wanting to control the trusts. These trusts were made principally to turn over income to our children, and we wanted it to be for their benefit. * * * we did not know who they might marry." We can have no doubt that it was the purpose and intent of the father and mother to protect their children and the trust income from any unworthy son-in-law or daughter-in-law who might come into the picture and inherit from their daughter or son, in case of death before the age of 30 was reached. Nothing indicates to us that the protection was to be limited to trust corpus alone. On the contrary, the language above quoted is affirmative that the trusts "were made principally to turn over income" to the children, and that decedent and her husband had a "purpose of wanting to control the trusts," which can mean nothing less than control primarily over income. The child was a mere beneficiary of the accumulated income and not the owner thereof under the language and intent, as we find it, of the trust instrument. The ownership of such income did not upon accumulation pass beyond the control of the trust, and the child as beneficiary could be supplanted by another by action of the decedent. We, therefore, conclude that the accumulated income did not vest at time of accumulation and that the decedent by virtue of her power to change the beneficiaries had at the time of her death such control under section 811 (d) (2) of the Internal Revenue Code of 1939 as to require inclusion of both accumulated trust income, and corpus, in her gross estate.

Because of concessions made

*Decisions will be entered under Rule 50.*