Earl Matthews and Marie Matthews v. Commissioner.
Matthews v. Commissioner
Docket No. 1857-69 S.C.
United States Tax Court
T.C. Memo 1970-336; 1970 Tax Ct. Memo LEXIS 25; 29 T.C.M. (CCH) 1607; T.C.M. (RIA) 70336; December 8, 1970, Filed *25 Held, during the year 1966, the petitioners were not carrying on the business of farming, and expenditures by them in that year in connection with their small farm are therefore not deductible under sec. 162 of the 1954 Code. Earl Matthews, pro se, 553 Melrose Dr., LaPlace, La. Meno W. Piliaris, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The respondent determined a deficiency in the petitioners' income tax for the calendar *26 year 1966 in the amount of $275.21. The issues presented for our decision are (1) whether certain expenses of the petitioners during the year 1966 (totaling $1,208.44) were incurred in the trade or business of farming, and (2), assuming that the expenses were so incurred, whether $1,120.04 of the total amount represents nondeductible capital expenditures. These issues involve sections 162, 262, and 263 of the 1954 Code. The petitioners do not contest the disallowance by the respondent of $240 in deductions for charitable contributions in the year 1966. Findings of Fact Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits thereto are incorporated herein by this reference. At the time the petition herein was filed, the petitioners, Earl Matthews and Marie Matthews, husband and wife, resided in LaPlace, Louisiana. They filed their joint Federal income tax return for the year 1966 with the district director of internal revenue, New Orleans, Louisiana. Earl was continuously employed full time by Ebasco Services, Inc., of Norco, Louisiana, as an accountant from July 1, 1950 to November 1, 1969. In 1966, Earl purchased 36 acres *27 of land in Livingston Parish, Louisiana. Prior to his purchase of the property, Earl had rented it for about a year and a half. During that period his parents made their home there. Situated on this Livingston Parish property were a frame house and a small barn or shed for feeding cattle. At the date of the purchase by Earl, both of these structures were in a state of disrepair and required substantial improvements. Earl's mother and father lived in the house rent-free during all of the year 1966. While living there, Earl's father took care of the property for Earl and helped him in the making of repairs and improvements and in the clearing of timber and underbrush. The petitioners did not reside on the property. Earl purchased eight calves in 1966, which he kept on the Livingston Parish property. They were too small to sell, and Earl made no attempt to find a purchaser for them. Of these eight calves, three were stolen during the year, two died, and one was slaughtered for food. During the year in issue, Earl worked at the property in his spare time several days a week. Earl's activities on the property did not produce any gross receipts in 1966. On their income tax return *28 for the year 1968, the petitioners reported $12 as profit from the sale of six goats acquired in 1967; they also reported a net loss of $514.90 from their "farm", after deducting their only farm expenses claimed of $498.04 for interest and $28.86 for taxes. During the year before us, Earl made purchases from the following companies in the indicated amounts: 1608 B. Stern Co., Ltd.
$ 6.63
Amite Building and Supply Co., Inc.
66.21
Zachary Lumber Co., Inc. 1,139.62
TOTAL
[1] $1,212.46
Among the purchases made from Zachary Lumber Co., Inc., were the following items bought by Earl on March 15, 1966, at a total cost of $577.60: Corrugated tin sheets Mahogany paneling Siding Supplies for installing the items above The tin sheets were used by Earl to make improvements to the roof of the house and as siding for the barn. The mahogany was used to panel a room in the house (which was previously not paneled), and the siding was used on the outside of the house. Also among Earl's purchases from Zachary Lumber Co., Inc., were the following items which he bought on March 12, 1966, at *29 a total cost of $459.07: Window units Flooring Sub-flooring Outside paint and primer Miscellaneous items The window units were used by Earl to replace the deteriorated existing windows in the house, and the flooring and subflooring were used to replace existing flooring in the house. In addition Earl made the following purchases during 1966 (included in the total amount of $1,220.46): Company
Item
Amount Paid
Stern
1 gallon of thinner
$ 2.55
Stern
13 boxes
4.08
Amite
Paint and varnish
12.04
Amite
Miscellaneous items [1]
54.17
Zachary
5 gallons of paint
31.93
Zachary
2 aluminum windows
40.89
Zachary
Miscellaneous items [1]
30.13
On their Federal income tax return for the year 1966, Schedule F, the petitioners claimed the following deductions as farm expenses: Repairs, maintenance
[2] $1,120.04
Interest
288.13
Feed purchased 88.40
TOTAL
$1,496.57
In his statutory notice of deficiency, dated February 6, 1969, the respondent *30 disallowed this deduction of $1,496.57 for farm expenses. The respondent cited as authority for his determination, section 162 of the 1954 Code. The respondent allowed $288.13 of the total amount claimed as farm expense since it represents interest expense, deductible as such. The respondent concedes that, in the event it is held that Earl was conducting a business, the $88.40 spent for feed would be deductible as an ordinary and necessary business expense. Ultimate Finding of Fact The petitioners were not engaged in the trade or business of farming during the calendar year 1966. Opinion The respondent determined that certain expenses of the petitioners during 1966 were not incurred in the trade or business of farming, and he has disallowed the deduction of these expenses pursuant to section 162. [3]
Section 162 provides that "there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Section 1.162-12, Income Tax Regs., provides: A farmer who operates a farm for profit *31 is entitled to deduct from gross income as necessary expenses all amounts actually expended in the carrying on of the business of farming. * * * If a farm is operated for recreation or pleasure and not on a commercial basis, and if the expenses incurred in connection with the farm are in excess of the receipts therefrom, the entire receipts from the sale of farm products may be ignored in rendering a return of income, and the expenses incurred, being regarded as personal expenses, will not constitute allowable deductions. * * * See also section 262 which states that "except as otherwise expressly provided in 1609 this chapter, no deduction shall be allowed for personal, living, or family expenses." The principal issue presented in this case is whether the petitioner-husband's activities on the Livingston Parish property amounted to the carrying on of the business of farming. The petitioners must show that Earl engaged in these activities with a bona fide expectation of realizing a profit. Margit Sigray Bessenyey, 45 T.C. 261, 273-274 (1965), affd. 379 F. 2d 252 (C.A. 2, 1967), certiorari denied 389 U.S. 931. Profit motivation "is the *32 most important criterion for the finding that a given course of activity constitutes a trade or business." Lamont v. Commissioner, 339 F. 2d 377, 380 (C.A. 2, 1964), affirming a Memorandum Opinion of this Court. The true intention of a taxpayer in a given case is primarily a question of fact to be ascertained upon the record of each case. Morton v. Commissioner, 174 F. 2d 302, 303-304 (C.A. 2, 1949), affirming a Memorandum Opinion of this Court, certiorari denied 338 U.S. 828. Margit Sigray Bessenyey, supra at page 274. In the present case, we have not been persuaded by the petitioners' evidence that Earl was conducting a farming business on the Livingston Parish property in 1966. Our findings disclose that, from the moment he first rented the property in 1964, he permitted his mother and father to make their home there. After Earl bought the property, his parents continued to reside there rent-free. During 1966, Earl and his father made substantial improvements to the house. In our view, the evidence establishes that Earl was desirous of providing suitable living accommodations for his parents, and that his activities on the property *33 during 1966 were minimal and, for the most part, directed at improving the accommodations available for that purpose. We are unable to regard as convincing Earl's testimony to the effect that he intended to conduct the business of farming on the property in the year before us. Earl's primary activity on the property consisted of making improvements to the house and the barn and of clearing the timber and underbush from the land. This activity, standing alone, is not indicative of a profitmaking motive. See R.E.L. Finley, 27 T.C. 413, 425 (1956), affd. on other issues 255 F. 2d 128 (C.A. 10, 1958). Petitioners sold no produce in 1966 or any other year. Earl characterized his efforts on the property as a cattle raising operation; he in fact purchased eight calves in 1966. They were too small to sell that year, and and as reflected in our findings three were stolen, two died and one was slaughtered for food. The remaining two are unaccounted for and presumably were still on the farm at the end of 1966. No sales of calves or cattle were made in 1966, and the record does not disclose such sales in any prior or subsequent year. The limited evidence in the record *34 does not establish to our satisfaction that Earl intended to realize a profit from his 1966 operation of the Livingston Parish property. See Margaret Batts Tobin, 11 T.C. 928, 949-950 (1948), modified without discussion on this point 183 F. 2d 919 (C.A. 5, 1950), certiorari denied 340 U.S. 904, and Margit Sigray Bessenyey, supra at page 274. An isolated sale of six goats two years later in 1968 for a net profit of $12 does not establish a profit motive in 1966. The goats were acquired in 1967. The petitioners have not shown in any detail what farming activities were engaged in and how these activities were directed at producing a profit. Aside from the goat sale in 1968, we are not aware of any occasion when Earl had any farming receipts whatsoever. Almost all of petitioners' activity and expense at the farm were occasioned by their efforts to improve and make more livable the house there occupied by Earl's parents. As laudable as it is for the petitioner to provide Earl's parents with a home, we are unable to regard Earl's actions as in any way rising to the level of carrying on a business. The petitioners have failed to carry *35 their burden of proof on this question. Welch v. Helvering, 290 U.S. 111 (1933); Rule 32 of the Rules of Practice of this Court. In view of our disposition of the basic issue before us, we do not address ourselves to the respondent's alternative argument that the petitioners' expenditures were capital in nature and hence could not be deducted under section 162 in any event as business expenses. Decision will be entered for the respondent. 1610 Footnotes
1. The parties' stipulation places this total amount at $1,212.02.↩
1. The exhibits supplied to the Court are not readily decipherable.↩
2. It is not clear from the record which of the expenditures listed above are included in the $1,120.04 figure.↩
3. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩