164 F.2d 128 (1947)
In re LUEDERS' ESTATE.
CITY BANK FARMERS TRUST CO. et al.
v.
COMMISSIONER OF INTERNAL REVENUE.
No. 9261.
Circuit Court of Appeals, Third Circuit.
Argued February 17, 1947.
Decided October 16, 1947.
*129 Arthur T. Vanderbilt, of Newark, N. J. (Walter E. Cooper, of Newark, N. J., on the brief), for petitioners.
Melva M. Graney, of Washington, D. C. (Sewall Key, Acting Asst. Atty. Gen., and Robert N. Anderson, Sp. Asst. to the Atty. Gen., on the brief), for respondent.
Before O'CONNELL and KALODNER, Circuit Judges, and FOLLMER, District Judge.
KALODNER, Circuit Judge.
This appeal is taken from the decision of the Tax Court.
The principal question presented is whether the facts concerning the creation, 15 months apart, or reciprocal irrevocable inter vivos trusts by decedent and her husband with power, in each instance, to terminate the trusts and acquire the trust property, support the Tax Court's conclusion that decedent's estate is liable for estate tax under § 811(d)[1] of the I.R.C., 26 U.S.C.A. Int.Rev.Code, § 811, on the theory that she may be regarded as the settlor of the trust created by her husband, under the doctrine of Lehman v. Commissioner, 2 Cir., 1940, 109 F.2d 99, certiorari denied 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406.
A secondary question is whether, assuming the Lehman doctrine applies, the trust in question is taxable at its full value at the time of decedent's death, or only in proportion to the values of the two trusts at the time of their respective creations.
The findings of fact of the Tax Court,[2] taken from a stipulation of facts and exhibits offered in evidence, may be summarized as follows:
Clothilde K. Lueders, the decedent, died testate, at the age of 75 years, on March 29, 1942, a resident of Summit, New Jersey. Frederick J. Lueders and the City Bank Farmers Trust Company (hereinafter called "taxpayers") are the duly appointed, qualified and acting executors under her will.
*130 The Commissioner determined an estate tax deficiency of $123,053.33 based upon the inclusion of $363,988.55 in decedent's gross estate as representing the value at her death of a trust created by her husband. The deficiency determination was predicated upon Section 811(a) of the I. R.C. and an alternative position that $349,200 was includible in decedent's gross estate under Sections 811(c) and (d). At the hearing before the Tax Court the Commissioner contended that $363,988.55 was the amount to be included under both positions. The Tax Court's decision rests upon Section 811(d).
From February, 1930, until his death on May 4, 1933, at the age of 76 years, Frederick G. Lueders, decedent's husband, was chairman of the board of directors of George Lueders & Company, a New York corporation engaged in the business of distilling, manufacturing, and dealing in essential oils and aromatic chemicals. He owned 1,200 of the 2,000 outstanding shares of the common stock and was in control of the company. Prior to being chairman of the board of directors, he had been president of the company for many years.
Decedent owned 450 of the 900 outstanding shares of preferred stock of the company, which carried no voting rights. She did not own any of the common stock.
On July 2, 1930, when he was 73 years of age, Frederick G. Lueders executed an irrevocable trust indenture under which he created a trust, naming himself and the City Bank Farmers Trust Company as trustees. Under the terms of the trust, the trustees were to pay the income to Clothilde K. Lueders, decedent, during her lifetime. Upon her death the trustees were to divide the principal and to hold it in three separate trusts, one for each of the children of Frederick G. Lueders. All of the provisions of the trust relating to the disposition of the income and principal of the trust fund, covered by Article 1, were made subject to Articles 2 and 3 of the trust indenture. Article 2 provided as follows: "At any time and from time to time so long as my wife, Clothilde K. Lueders, shall be living, she shall have the right, by any instrument in writing, signed and acknowledged by her like a conveyance of real property entitled to record in New York, and delivered to my said Trustees during her life, to amend this trust in any respect whatsoever and to terminate the same as to the whole or any part thereof, and in the event of any such termination my said Trustees shall transfer, pay over and deliver to my said wife such part, or the whole, as the case may be, of the principal of the trust fund, as to which the trust is so terminated."
Article 3 provides in part as follows: "* * * my said wife shall have the power by an instrument in writing, signed and acknowledged by her like a conveyance of real property entitled to record in New York, and delivered to my said Trustees during her life, to direct my said Trustees to continue to hold the principal of the trust fund undivided after her death for such period, but in no event exceeding twenty-one years after the death of the last survivor of my said wife and all our issue now living, as my said wife may specify in such written instrument, and during such period as she may so specify, to pay the net income from said trust fund to such of her husband and/or her issue her surviving, and in such proportions, as she may direct in such written instrument. In the event that my said wife shall exercise the power in this Article `3' of this Agreement above conferred upon her, then during the period specified by her in such written instrument, the principal of the trust fund shall be held undivided and the income thereof shall be disposed of as directed in such instrument instead of as in Article `1' hereinabove provided; and upon the termination of the period so specified by her the principal of the trust fund then in the hands of my said Trustees shall be disposed of as in Article `1' of this Agreement above provided, in like manner as if my said wife had died immediately after the termination of such period."
The trust indenture provided, further, that if at any time during the life of Clothilde K. Lueders there should be no individual co-trustee acting with the trust company, then she should have the power to appoint, by a written instrument, an individual *131 to act as co-trustee with the trust company.
The corpus of this trust consisted of stocks of various corporations and bonds which had a fair market value of $640,000 on July 2, 1930, the date of the creation of the trust.
As a result of his creation of the trust, Frederick G. Lueders was left without any assets except (his stock in George Lueders & Company and) his salary, which was $9,250 in 1930 and $8,025 in 1931.
From the time of the creation of the above trust until his death in 1933, Frederick G. Lueders continued to reside with his wife, the decedent, in their home at Summit, New Jersey. During this period their mode of living continued on the same standard as existed prior to the creation of the trust.
On October 21, 1931, about 15 months after her husband had created the trust for her benefit, Clothilde K. Lueders, the decedent, created a trust for the benefit of her husband, naming him and the City Bank Farmers Trust Company as trustees. Coincident therewith, she irrevocably transferred to the trustees stocks of various corporations which belonged to her in her own right. None of these securities had at any time been a part of the securities comprising the corpus of the trust created by her husband. The fair market value of the securities she transferred to the trust was approximately $349,200 on October 21, 1931, the date of the creation of the trust. On that date, the value of the securities comprising the corpus of the trust created by her husband was approximately $373,000.
The creation of the trust by decedent did not result in her impoverishment.
This trust indenture and the one previously executed by decedent's husband were both drafted by the same firm of attorneys, and were cast substantially in the same pattern. Under the trust created by decedent, her husband was to receive the trust income during his life and upon his death the principal was to be held in trust for the children in the same manner as was specified in the trust created by her husband. Also, her husband was given the right to amend and to terminate the trust in whole or in part, and in the event of such termination the trustees were to pay the principal of the trust fund to him. He was given the right to direct the trustees, by a written instrument, to retain the principal of the trust for a limited number of years after his death.
Decedent's transfer in trust was not made in contemplation of death.
On July 2, 1930, and October 21, 1931, the dates the two trusts were created, the Lueders' three children were living, as were also two grandchildren.
On November 17, 1931, less than a month after the creation of the trust by decedent, her husband terminated the trust and the principal of the trust was paid over to him forthwith. The property which he acquired from the trustees was part of his general estate at the time of his death in 1933.
For many years prior to October 21, 1931, George Lueders & Company had been borrowing substantial sums of money from banks in New York and that practice was continued in the months of August, September and October of 1931. As his reason for terminating the trust created by his wife, Frederick G. Lueders stated that it had become necessary for George Lueders & Company to make arrangements for additional lines of credit in connection with its business and in order that the company might secure credit he had to guarantee, personally, the bank loans of the company and give the lending banks a satisfactory statement of his own financial condition, which he was unable to do without terminating the trust.
Although decedent had the power to terminate the trust created by her husband and take over the trust property in her own right, she did not exercise the power and the trust was in existence at the date of her death in 1942. On that date, the corpus had a value of $363,988.55.
On the facts as stated, the Tax Court (five judges dissenting) held that the entire corpus of the estate created by her husband was includible in the decedent's gross estate under Section 811(d).
The latter section provides for the inclusion in a decedent's gross estate of the value *132 of a transfer of property (by trust or otherwise), made by the decedent, the enjoyment of which was subject at the date of his death to change through exercise of a retained power to alter, amend or revoke.
Under the Lehman doctrine the provisions of Section 811(d) have been construed to apply to a case "* * * where the decedent by paying a quid pro quo has caused another to make a transfer of property with enjoyment subject to change by exercise of such power by the decedent." Lehman v. Commissioner, supra, 109 F.2d at page 100.
The Lehman doctrine is premised on the well-settled law of trusts that "A person who furnishes the consideration for the creation of a trust is the settlor, even though in form the trust is created by another person." 1 Scott on Trusts (1939), Section 156.3.
In applying the Lehman doctrine, the Tax Court found that the facts as stated "compel the conclusion" that "there was a mutual exchange of property" between decedent and her husband, that the decedent had furnished "consideration" for the trust created by her husband even though the two trusts were created 15 months apart, and as a consequence "she must be regarded as the settlor of that trust", thereby making Section 811(d) applicable in view of the fact that the decedent had the power to terminate the trust and receive the trust principal.
At the outset it must be stated that the Tax Court made no specific finding either in its finding of facts or in its opinion, that the decedent and her husband had ever entered into an agreement, express or implied, to make reciprocal transfers of property. The absence of such a fact finding is brought into sharp focus by the following quotation from the Court's opinion: "It is not impossible that the decedent and her husband had some understanding at the time he created the trust in 1930, that she would so act, if necessary." (Emphasis supplied.)
Despite the failure to find that there was any agreement or understanding to make the reciprocal transfers, and despite the fact that the trusts were created 15 months apart, the Tax Court, in apparent recognition of the requirement that consideration must be established in order for the Lehman doctrine to become applicable, concluded in its opinion that there was "consideration" by a curious series of deductions, which in view of the record itself fail to attain the dignity of factual inferences and can only be described as "hunches". Thus, while the Court at one point in its opinion specifically stated, as previously quoted, that "It is not impossible that the decedent and her husband had some understanding * * *", at another point it made the following contradictory statement: "Furthermore, the circumstances strongly indicate that Frederick Lueders had some assurance in 1930 when he transferred all of his assets to a trust, that the decedent would not fail to provide him with some assets, in return, if necessary." (Emphasis supplied.)
The following excerpts from its opinion are illustrative of the "reasoning" by which the Tax Court found that "consideration" was established.
"The creation of a trust by the decedent in 1931, made it feasible for the 1930 trust to be continued in existence." (Emphasis supplied.)
"The situation was such that there was surely a practical need for the decedent's terminating the 1930 trust and returning the property to her husband. That she elected not to do so is a fact which cannot be minimized." (Emphasis supplied.)
"In October of 1931 the decedent could not have been acting independently, and we do not believe that her creation of a trust for the benefit of her husband was entirely unrelated to his termination of that trust within 30 days thereafter." (Emphasis supplied.)
"Furthermore, a realistic view indicates that the decedent was under a moral obligation to provide her husband with assets when he became in need." (Emphasis supplied.)
"The property which the decedent transferred to a trust for her husband constituted a quid pro quo for the property which was allowed to remain in the existing trust." (Emphasis supplied.)
*133 In view of the fact that the case was tried upon a stipulation and there wasn't a single discernible statement therein that the decedent's trust was created as a quid pro quo or in consideration of the creation of the husband's trust 15 months earlier, or as a result of any agreement or understanding, it is apparent that the sole source of the Tax Court's finding that there was "consideration" flowed from what may be described as the intuitive processes of the Tax Court.
The conclusion is inescapable that the Tax Court's finding that consideration was present is without "substantial basis in the evidence."
A finding of fact must have more substantial foundation that an intuition that "It is not impossible that the decedent and her husband had some understanding * * *" or that there was "* * * surely a practical need * * *" or that "* * * the decedent could not have been acting independently * * *" or that "* * * a realistic view indicates that the decedent was under a moral obligation * * *."
While "The Tax Court has the primary function of finding the facts in tax disputes, weighing the evidence, and choosing from among conflicting factual inferences and conclusions those which it considers most reasonable" (emphasis supplied)[3] it is well settled that speculation cannot be substituted for proof[4] and "the requirement is for probative facts capable of supporting, with reason, the conclusion expressed in the verdict."[5] The rule was succinctly stated in Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458, as follows: "The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked." (Emphasis supplied.)
It has been reaffirmed in Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, and Myers v. Reading Co., 331 U.S. 447, 67 S.Ct. 1334.
Furthermore, the petitioners here are entitled under the facts in this case to the benefit of the rule stated. Under the Stipulation of Facts, the trust created by the decedent's husband was on its face a prima facie gift,[6] thus imposing the burden on the Government to rebut, and under the Galloway rule the petitioners were entitled to "due allowance for all reasonably possible inferences favoring the party whose case is attacked."
Instead of enjoying the benefit of the rules stated, the petitioners received contrary treatment, viz., the unfavorable speculation of the Tax Court. As to the latter, there was no duty on the part of the petitioners to eliminate "all unfavorable possibilities".[7]
In attempting to sustain the Tax Court's *134 ruling the Government contends that the application of the Lehman doctrine "does not depend upon whether decedent furnished legal consideration for the creation of her husband's trust" and that "while the decisions applying the principle speak of `consideration', this has meant consideration in the sense that, because knowledge of the other transfer or of a tacit understanding between the parties, the transfer of the decedent was not an independent act."
The cases relied upon by the Government do not, however, sustain its contention. To begin with, in the Lehman case, the two trusts were created simultaneously and concededly in consideration for one another. That is apparent from the following statement in the Lehman opinion on page 100 of 109 F.2d.
"The decisive point is that the decedent by transfer of his share to the brother or for the brother's use or according to the brother's direction caused the brother to make a transfer of property in trust under which the decedent had the right to withdraw $150,000 from principal.

* * * * * *
"Here the transfer by the decedent's brother, having been paid for and brought about by the decedent, * * *."
In Hanauer's Estate v. Commissioner, 2 Cir., 1945, 149 F.2d 857, certiorari denied 326 U.S. 770, 66 S.Ct. 175, 90 L.Ed. 465, there was a simultaneous creation of trusts by the decedent and his wife. The Tax Court in its own opinion premised its ruling on the "concert of action" stating that "* * * evidence of any `concert of action' or any understanding or agreement between parties who create cross-trusts at the same time, is strong evidence that such trusts are created in consideration of each other."[8] In the Hanauer case not only were the trusts created simultaneously but the decedent left it to her husband and son-in-law to select from her portfolio the securities which should be included, the husband decided the amount of both the trusts, and the two trust indentures were prepared by the same attorney and executed as though part of a single transaction. The Court of Appeals stressed in its affirmance of the Tax Court's ruling that there was justification in the record for the finding that the decedent's creation of the trust was in consideration of her husband's simultaneous creation of his trust.
In Cole's Estate v. Commissioner, 8 Cir., 1944, 140 F.2d 636, 151 A.L.R. 1139, the reciprocal trusts were also created simultaneously. In the Estate of Eckhardt v. Commissioner, 1945, 5 T.C. 673, the reciprocal trusts were executed six days apart but with both settlors aware of the contemplated action of the other. In the Estate of Frederick F. Fish v. Commissioner, 1941, 45 B.T.A. 120, the trusts were created simultaneously.
Analysis of the cases relied on by the Government discloses the differences between them and the instant case. Here the trusts were not simultaneously executed but were 15 months apart; there was no evidence of any agreement, express or implied, or even an "understanding" to make reciprocal transfers of property at the time the husband's trust was created.
That consideration is the decisive factor and must be present in order to make the Lehman doctrine applicable was ruled by the Tax Court in McLean v. Commissioner, 41 B.T.A. 1266, affirmed 5 Cir., 1942, 127 F.2d 942, and Estate of Samuel A. Lindsay v. Commissioner, 1943, 2 T.C. 174.
In the McLean case, 41 B.T.A. at page 1267, the Board, after holding the Lehman doctrine inapplicable, specifically ruled "The fact that the trusts were created at the same time and contained reciprocal provisions does not prove that one was created in consideration of the other, and the fact that the transfers were in equal amounts and made at the same time does not show that one was made in consideration of the other."
In Lindsay v. Commissioner, supra, reciprocal trusts almost identical in terms and amounts were simultaneously created by husband and wife. Their attorney son prepared the trust agreements. The wife knew of the husband's steps in creating the trust but she did not advise him of her plan to do likewise. The Court held that *135 since the record did not establish that the transfers were made in consideration of one another they must be treated as gifts.
Said the Court in 2 T.C. at pages 178, 179: "We are satisfied, on the record, that there was neither agreement nor tacit understanding between the two grantors that the trusts should be created. * * *. But the facts that the trusts were executed about the same time, were in substantially equal amounts, and had similar provisions are not conclusive that the trusts were interdependent and were executed in consideration of each other. See McLean v. Commissioner, 41 B.T.A. 1266, and the opinion of the Circuit Court of Appeals affirming that case on this point, 5 Cir., 127 F.2d 942, 943."
The Tax Court in the Lindsay case specifically declined to apply the Lehman doctrine because of the "actual interdependence of the two transfers" as evidenced by absence of consideration.
It is evident that the Tax Court's error in the instant case flows from its misconception (1) as to the compelling necessity to establish existence of legal "consideration" at the time of the creation of the transfers and (2) from its interpretation of the legal content of the term "consideration".
It is somewhat difficult to understand the Tax Court's error on the first point in view of its rulings in the Lindsay and McLean cases that consideration must exist at the time of the creation of the respective transfers or trusts. On this score it is significant that Judge Van Fossan who wrote the Lindsay opinion, judge Murdoch who wrote the McLean opinion and Judge Charles P. Smith who wrote the Lehman opinion were among the five judges who dissented from the Court's ruling.
The Tax Court's misapprehension as to what constitutes "consideration" is strikingly apparent in its conclusion that the decedent's transfer, 15 months later, "constituted a quid pro quo for the property which was allowed to remain in her husband's trust."
"Quid pro quo" in its common acceptance means "something for something; an equivalent in return; a consideration in the contract" as defined by Webster. Bouvier defines it as "a term denoting the consideration of a contract." Consideration, in a contract, is the quid pro quo that the party to whom the promise is made, does or agrees to do in exchange for the contract.
Since both trusts were executed in New Jersey, the domicile of their settlors, the definition of "consideration" in the Restatement of the Law of Contracts, Sec. 75, with which New Jersey is in accord (see New Jersey Annotations), is of interest: "(1) Consideration for a promise is (a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification or destruction of a legal relation, or (d) a return promise, bargained for and given in exchange for the promise."
An examination of the record and of the Court's opinion fails to disclose the presence of any of these elements constituting consideration in the creation of the two trusts.
It is too well-settled to require citation that generally for an act to constitute consideration it is essential that it or the promise to do it be simultaneous with the execution of the contract. Also, that it is the presence of legal consideration which makes a transfer of property a sale and the absence of consideration which makes a transfer a gift. Further, that gifts are such even though there was concerted action with respect thereto by the parties interchanging them.
As to the Tax Court's conclusion that "the decedent was under a moral obligation to provide her husband with assets when he became in need" such "moral obligation" is insufficient to constitute legal "consideration" by the great weight of authority in the United States. 1 Williston on Contracts, Rev.Ed., p. 522, Sec. 148. The rule prevails in New Jersey. Cockrell v. McKenna, 103 N.J.L. 166, 134 A. 687, 48 A.L.R. 234.
Finally, the Government urges that the Tax Court's conclusion as to the presence of consideration cannot be disturbed under Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, and kindred cases.
*136 As to that, it is evident from the foregoing that the Tax Court erred as a matter of law in the interpretation of the legal content of the word "consideration" and that the conclusion that there was consideration is "without substantial basis".
Certainly Dobson v. Commissioner cannot be utilized by the Government to justify the "judicial taxation" which was inherent in the Tax Court's disposition of this case.
For the reasons stated the decision of the Tax Court will be reversed.
O'CONNELL, Circuit Judge (dissenting).
In my opinion, a finding of fact essential to the upholding of the deficiency assessment has not been made by the Tax Court. In accordance with Commissioner v. Scottish American Co., 1944, 323 U.S. 119, 123, 124, 65 S.Ct. 169, 89 L.Ed. 113, it was the primary function of the Tax Court to choose from among conflicting factual inferences, and thereby determine whether or not, on July 2, 1930, an agreement to make reciprocal transfers of property existed between decedent and her husband. The language used in the Opinion of the Tax Court in the instant case does not satisfy me that the Tax Court made that finding.
I am constrained, however, to disagree with the majority disposition of this case. Had the finding been made, I am not prepared to say that there would be no "substantial basis" for that finding, in view of the following uncontroverted facts: (1) the close relationship and advanced age of the settlors of the trusts involved, (2) the depletion of the personal resources of decedent's husband, consequent upon the creation of the 1930 trust, (3) the similarity of the trusts, for which the same attorneys were used, and (4) the similarity of amount, although the securities forming the corpus of the trusts were not the same. As I interpret the Scottish American case, supra, this court has power to make its own factual inferences and conclusions, on appeals from Tax Court decisions, only when there is lacking a substantial basis for inferences made by the Tax Court. Accordingly, I believe that the Tax Court decision should be reversed and the cause remanded to the Tax Court for the purpose of making a specific finding as to whether an agreement did exist on July 2, 1930.
This course of action would appear to have additional value in the case sub judice. As is stated in the majority opinion, the deficiency assessment was originally based upon Section 811(a) of the Internal Revenue Code. The conclusion that the trusts created fell within the doctrine of Lehman v. Commissioner, 2 Cir., 1940, 109 F.2d 99, certiorari denied, 1940, 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406, rendered it unnecessary for the majority of the Tax Court to determine whether the bundle of rights granted decedent by the 1930 trust was such as to require the application of the principles exemplified by Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. Reversal of the decision of the Tax Court without remanding of the cause, it seems to me, permits petitioner to avoid liability without its first being determined whether another alleged basis for the deficiency assessment is valid.
For the reasons stated, I believe that the decision of the Tax Court should be reversed and the cause remanded for further appropriate proceedings.
NOTES
[1] "Sec. 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States 
* * * * * * *
"(d) Revocable transfers
* * * * * * *
"(2) Transfers on or prior to June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"
[2] The findings of fact and opinion of the Tax Court are reported in 6 T.C. 587.
[3] Commissioner v. Scottish American Inv. Co., Ltd., 323 U.S. 119, 123, 124, 65 S.Ct. 169, 171, 89 L.Ed. 113.
[4] Galloway v. United States, 319 U.S. 372, 387, 63 S.Ct. 1077, 87 L.Ed. 1458.
[5] Myers v. Reading Co., 331 U.S. 447, 485, 67 S.Ct. 1334, 1339.
[6] George W. Van Vorst, Executor, v. Commissioner, 1931, 22 B.T.A. 632, affirmed 9 Cir., 1932, 59 F.2d 677.
[7] In the Van Vorst case the transaction was in form a sale by a corporation to its principal stockholder. The Commissioner contended that the transaction was not in fact a sale as it purported to be, but a declaration of a dividend made pursuant to an agreement with the other stockholders. The Board said in 22 B. T.A. at page 634: "In our opinion the stipulated facts, including the stipulation that the decedent `purchased' the property, made a prima facie case for the petitioner and it was then incumbent upon the respondent (the Commissioner) to show that although this was in form a sale, nevertheless it occurred under circumstances which indicate that in fact it was a distribution of earnings or profits accumulated since February 28, 1913. In this connection we see no reason to infer that the stockholders ever agreed to an unequal distribution. This majority stockholder undoubtedly purchased at a bargain price and there were stockholders who did not share in the bargain. But bargain purchases do not ipso facto require an explanation by the purchaser to avoid tax. Proof of a prima facie case does not require the elimination of all unfavorable possibilities. The purpose of the rule of evidence is to avoid just such difficulties." (Emphasis supplied.)
[8] T.C.Memo Opin.