SHARON HERALD CO. v. GRANGER.

No. 10510.

United States Court of Appeals
Third Circuit.

Argued Dec. 18, 1951.

Filed April 10, 1952.

Leo H. McKay, Sharon, Pa. (C. E. Brockway, Brockway, McKay & Brockway, all of Sharon, Pa., on the brief), for appellant.

Carolyn R. Just, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Special Assts. to the Atty. Gen., Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

This appeal, involving income and excess profits taxes for the years 1941, 1942 and 1943, is taken from the judgment of the District Court in favor of the Collector of Internal Revenue ("Collector") in an action for refund instituted by the plaintiff, Sharon Herald Company ("taxpayer").

The question presented is whether the taxpayer is entitled to a deduction from gross income for State tax which it paid on behalf of its bondholders[1] as (1) interest on indebtedness under Section 23(b) of the Internal Revenue Code; or (2) business expense under Section 23(a) (1) (A).[2]

The taxpayer contends that it paid the State tax under an express oral agreement with its bondholders and that the tax so paid is deductible either as interest or business expense under the applicable provision of Section 23. The Collector answers that there was no such oral agreement, and moreover, that under Section 23(b) and the pertinent Treasury Regulations[3] no deduc-

1. Section 17 of the Pennsylvania Personal Property Tax Act, Act of June 22, 1935, P.L. 414, its supplements and amendments, 72 Purdon's Pennsylvania Statutes, § 3250–10, in force and effect during the taxable years herein provides: "All * * * bonds * * * issued * * * by any and every private corporation, incorporated * * * under the laws of this Commonwealth * * * are hereby made taxable for State purposes at the rate of eight mills on each dollar of the nominal value * * *."

Section 18 of the Act, 72 Purdon's Pennsylvania Statutes, § 3250–11a provides: "It shall be the duty of the resident treasurer of each private corporation, incorporated by or under the laws of this Commonwealth * * * upon the payment of any interest upon any * * * bond * * * to residents of this Commonwealth * * * to assess the tax imposed * * * by the seventeenth section of this act * * * (and) to deduct the tax * * * on the payment of any interest upon such indebtedness and return the same to the State Treasury * * *."

2. "§ 23. Deductions from gross income. "In computing net income there shall

be allowed as deductions: (a) [As amended by Sec. 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798] *Expenses.* "(1) *Trade or business expenses,* "(A) *In general.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.
* * * * * *

"(b) *Interest.* All interest paid or accrued within the taxable year on indebtedness, * * *." 26 U.S.C. 1946 Ed., § 23.

3. Treasury Regulations 103, (Sections 29.23(c)–1 and 29.143–1 of Treasury Regulations 111, applicable for taxable years beginning after December 31, 1941, are substantially the same as the below

tion is allowable where the bonds on which the state tax is paid do not contain a tax-free covenant; further that the payments in question were not deductible as ordinary or necessary business expenses of the taxpayer under Section 23(a) (1) (A) of the Code since there was nothing in the record to show that the payments were ordinarily incurred or that they contributed to or benefited the taxpayer's business of publishing newspapers.

The District Court premised its judgment in favor of the Collector on the conclusion that the payments of the State tax were not "interest paid" within the meaning of Section 23(b) because of the non-existence of a written tax-free covenant in the bonds and that further, the payments were not "ordinary and necessary expenses" under Section 23(a) (1) (A).

The facts as found by the District Court [4] may be summarized as follows:

Taxpayer corporation was incorporated May 13, 1935, under the laws of Pennsylvania, its formation having resulted from the consolidation of two predecessor corporations (the Sharon Herald Publishing Company and the News Telegraph Company) which had been engaged in the publication of daily newspapers in Sharon, Pennsylvania. Four individuals held all of the capital stock of the Sharon Herald Publishing Company and three individuals held all of the capital stock of the News Telegraph Company. Upon incorporation, taxpayer corporation issued $117,500 seven per cent debenture bonds, 975 shares seven per cent preferred stock having $100 a share par value, and 2500 shares no par common stock to former stockholders of the predecessor companies. Three of the latter received all three securities; one received debenture bonds and preferred stock; one received preferred and common stock and two received only common stock.[5] The seven per cent debenture bonds did not contain a written covenant to pay the State tax.

In 1937 taxpayer issued $215,000 new five per cent debenture bonds which were exchanged for the old $117,500 seven per cent

quoted sections) promulgated under the Internal Revenue Code, provide:

"Sec. 19.23(c)–1 *Taxes.*—Subject to the exceptions stated in this section and section 19.23(c)–2 and 19.23(c)–3, taxes imposed by the United States, any State or Territory, or political subdivision of either, possessions of the United States, or foreign countries, are deductible from gross income for the year in which paid or accrued (see section 43) * * *. In general taxes are deductible only by the person upon whom they are imposed. As to tax paid at the source on interest from tax-free covenant bonds, see section 143 (a) (3)."

"Sec. 19.143–1. *Withholding tax at source.*—(a) *Withholding in general.*—
* * * * * *
"(b) *Tax-free covenant bonds issued before January 1, 1934.*—

* * * * * *

In the case of corporate bonds or other obligations containing a tax-free covenant, issued before January 1, 1934, the corporation paying a Federal tax, or any part of it, for someone else pursuant to its agreement is not entitled to deduct such payment from its gross income on any ground * * * *In the case, however, of corporate bonds or other obligations containing an appropriate tax-free covenant, the corporation paying for someone else, pursuant to its agreement, a State tax or any tax other than a Federal tax may deduct such payment as interest paid on indebtedness.*" (emphasis supplied)

4. The Findings of Fact and Opinion of the District Court are reported in 97 F.Supp. 295.

5. The various classes of securities were apportioned among the seven men as follows:

| Name | 7% Debenture Bonds | 7% Preferred Stock | Common Stock |
|---|---|---|---|
| Dickinson | $65,000.00 | 250 Shares | 150 Shares |
| Aiken | | 200 Shares | 450 Shares |
| Lartz | | | 700 Shares |
| Buchholz | 32,500.00 | 325 Shares | |
| Ramsey | 15,000.00 | 150 Shares | 350 Shares |
| Pharmer | 5,000.00 | 50 Shares | 100 Shares |
| McDowell | | | 750 Shares |
| Total Original Issue | $117,500.00 | 975 Shares | 2500 Shares |

bonds and $97,500 preferred stock. Since 1937 some of the original holders have died, their holdings being distributed to their heirs and estates, and additional bonds have been issued both to the original holders and to outsiders. During the taxable years taxpayer's outstanding bonds were held by approximately eighty individuals.[6]

During the taxable years taxpayer paid the corporate loans tax imposed on its resident bondholders by the Pennsylvania Personal Property Tax Act.

The payments were made with the knowledge, consent and approval of the officers, directors, and stockholders of the taxpayer corporation. The five per cent debenture bonds did not contain a written covenant to pay the tax and the taxpayer did not by formal resolution agree to pay the tax imposed upon its resident bondholders by Section 17 of the Pennsylvania Personal Property Tax Act. The amounts paid were not tax payment levied or assessed against the corporate taxpayer by the Pennsylvania statute.

Existence of an agreement was not recognized in a formal manner until a resolution of taxpayer's board of directors, passed November 15, 1943, was formerly adopted by the stockholders on November 27, 1943. This action was taken to meet the objection raised by the Internal Revenue Bureau in disallowing the deductions for the taxable years. Thereafter, for the same purpose, a rider was attached to the outstanding debenture bonds stating that the state tax on the bond was assumed by the taxpayer corporation and would be paid by it.

The amounts paid by taxpayer were paid from its own funds. The resident treasurer of taxpayer did not at any time assess the State tax against the resident holders of either the seven per cent or five per cent debenture bonds, nor did he notify them that it had assessed and deducted the State tax on the bonds nor did it at any time deduct the amount of taxes from the interest due to the bondholders.

The minutes of the taxpayer did not contain any reference to any undertaking by it to pay the State tax prior to adoption of the resolution in November, 1943.

The District Court found as a fact "* * * the taxpayer orally obligated itself to pay the State taxes on the 1935 and 1937 bonds * * * and that the existence of such a corporate agreement has been established."

Further, in Paragraph 19 of its Findings of Fact the District Court specifically found:

"19. The 5% debenture bonds issued by the plaintiff did contain an oral tax-free covenant to pay the tax imposed upon the resident bondholders by Section 17 of the Pennsylvania Personal Property Tax Act."

With respect to the fact-finding stated, the District Court, however, concluded as a matter of law that under the pertinent Treasury Regulations the tax-free covenant had to be written on the bonds or attached thereto as a rider.

The taxpayer's insistence here that the State tax is deductible as interest is premised (1) on the District Court's fact-findings that it had orally obligated itself to pay the tax and that the five per cent debenture bonds issued in 1937 contained "an oral tax-free covenant to pay the tax"; and (2) the contention that the Court erred as a matter of law in ruling that an oral covenant was not sufficient, and that a written covenant was imperative under the Treasury Regulations.

On the latter score, we are of the opinion that the District Court's interpretation of the phrase "containing an appropriate tax-free covenant" as meaning a written agreement is reasonable and correct. It is well-settled that a fundamental

---

6. At the end of the taxable year 1941 there were $284,100 of the five per cent debenture bonds outstanding of which $237,600 were held by the original owners or their estates or heirs; at the end of taxable year 1942 $284,450 were outstanding of which $228,900 were held by the original owners, their estates or heirs; and at the end of taxable year 1943 the outstanding total was $288,250 of which $225,500 were held by the original owners, their estates or heirs.

requisite of a "covenant" is that it be signed and sealed. Schram v. Coyne, 6 Cir., 1942, 127 F.2d 205, certiorari denied, 317 U.S. 652, 63 S.Ct. 48, 87 L.Ed. 525. The Commissioner of Internal Revenue has for many years construed the word "covenant" as used in the Regulations to mean a written covenant appearing on the bond or attached thereto. The courts have repeatedly held that the administrative view of a regulation should be followed. Helvering v. Griffiths, 1943, 318 U.S. 371, 398, 63 S.Ct. 636, 87 L.Ed. 843; further, Treasury Regulations subsequently re-enacted in the same terms are considered to have received legislative approval and to have the force and effect of law. Helvering v. Griffiths, supra; Commissioner of Internal Revenue v. Wheeler, 1945, 324 U.S. 542, 547, 65 S.Ct. 799, 89 L.Ed. 1166, rehearing denied, 325 U.S. 892, 65 S.Ct. 1182, 89 L.Ed. 2004.

As pointed out by the Collector, language identical to that used in the pertinent Treasury Regulations first appeared in Article 761 of Treasury Regulations 74 promulgated under the Revenue Act of 1928, and has been repeated without change in successive Regulations issued under subsequent Acts.[7]

Notwithstanding our view as to the correctness of the District Court's conclusion of law, we are compelled to a further consideration as to whether there was any basis in the record for its fact-findings, because the Collector challenges them as erroneous and the taxpayer insists with equal vigor that they are well-founded.

Consideration of the testimony makes it crystal clear that there was no basis for the District Court's fact-findings that (1) the taxpayer had orally obligated itself to pay the State tax on the five per cent debenture bonds in 1937; and (2) the latter bonds contained "an oral tax-free covenant" to pay the tax. As to the latter finding, it is a contradiction in terms to speak of a written instrument "containing" an oral undertaking.

Only two witnesses, called by the taxpayer, testified on the subject of the State tax payments. One was Lartz, taxpayer's general manager, and the other McDowell, its president. Their testimony justified a finding that there was an agreement to pay the State tax on the original seven per cent debenture bonds issued in 1935, but just as clearly established that there was no basis for such a fact-finding with respect to the five per cent bonds issued in 1937 involved in this litigation. McDowell was never even questioned nor did he testify as to what transpired in connection with the 1937 issue.

The sum total of Lartz's testimony on that aspect follows:

"Q. (page 34 N.T.) Now, in your conferences prior to this action, was there anything agreed to as to the state tax on the 5 per cent bonds? A. I can't say that it was definitely mentioned, but it certainly was assumed that if we paid it before on seven, we would naturally pay it on five."

The latter part of the answer was stricken by the Court on motion of the Collector's counsel.

"Q. (page 35 N.T.) Do you recall whether you discussed that question of the state tax on the new bonds with any of the other six involved in the two companies? A. I can't recall, Mr. McKay. That was a small detail in my book."

* * * * * *

"Q. (pages 35–36 N.T.) What was your own understanding as to whether the original obligation of the corporation to pay the state tax out of corporate funds was to continue on and be effective as to the five per cent bonds?"

The Court sustained an objection to this question and at the same time stated:

"I can only draw one inference from the testimony—let's be frank—that ev-

---

7. Art. 761 of Treasury Regulations 77, promulgated under the Revenue Act of 1932; Art. 143–1(b) of Treasury Regulations 86, promulgated under the Revenue Act of 1934; Art. 143–1(b) of Treasury Regulations 94, promulgated under the Revenue Act of 1936; Art. 143–1(b) of Treasury Regulations 101, promulgated under the Revenue Act of 1938.

eryone agreed that the corporation would pay the tax as stated. I will make that a finding of fact. What other inference can I draw? "

Up to that point, when the Court made the finding of fact mentioned, the only testimony as to the taxpayer's agreement with respect to five per cent bonds was as set forth above.[8]

█ The testimony referred to inevitably leads to the conclusion that the District Court arrived at its disputed fact-findings on what can only be described as speculation or intuition and nothing else, and accordingly must be held to be clearly erroneous. We have in the past held that "A finding of fact must have more substantial foundation than an intuition * * *" and that while the trial court "'* * * has the primary function of finding the facts in tax disputes, weighing the evidence, and choosing from among conflicting factual inferences and conclusions those which it considers most reasonable' it is well settled that speculation cannot be substituted for proof and 'the requirement is for probative facts capable of supporting, with reason, the conclusion expressed in the verdict.'" In re Lueders' Estate, 3 Cir., 1947, 164 F. 2d 128, 133.

█ It is apparent that the District Court made its fact-finding with respect to the 1937 bond issue on an inference that the taxpayer's obligation as to the 1935 issue carried over. The evidence, however, disclosed that there was no agreement entered into by the taxpayer with its stockholders to that effect in 1937. We agree with the Collector that there is no principle of law which would impute to a new bond issue a supplemental oral agreement in connection with the prior bonds, particularly, where, as here, only a part of the new bonds were issued in exchange for the old.

As to the taxpayer's contention that the District Court erred in ruling that it was not entitled to a deduction from gross income for the State tax as "business expenses" under Section 23(a) (1) (A):

█ In our opinion the contention is without merit. This section of the Code provides that in computing net income there shall be allowed as deductions "All the ordinary and necssary expenses paid or incurred * * * in carrying on any trade or business * * *." In Section 23(a) (1) (A) "Ordinary has the connotation of normal, usual, or customary * * * the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved." Deputy v. duPont, 1940, 308 U.S. 488, 495, 60 S.Ct. 363, 367, 84 L.Ed. 416. It was specifically held in Warner Co. v. Commissioner, 1948, 11 T.C. 419, affirmed by this Court, 1950, 181 F.2d 599 that Pennsylvania corporate loans tax, imposed by law on the individual stockholder, when paid by the obligor is not a business expense. As was held by the District Court, the fact that the taxpayer may have been required under the terms of the State statute to withhold and make the payments to the State on behalf of its bondholders, is not enough to establish them as deductible as business expense.

█ Allowances as business expense must not only be obligatory but also must be such as are ordinarily incurred in carrying on the taxpayer's trade or business. Interstate Transit Lines v. Commissioner of Internal Revenue, 1943, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607, rehearing denied, 320 U.S. 809, 64 S.Ct. 26, 88 L.Ed. 489; A. Giurlani & Bro. v. Commissioner, 9 Cir., 1941, 119 F.2d 852; Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212.

In the instant case there was adequate basis for the District Court's fact-finding

---

8. The Lartz cross-examination which followed (page 44 N.T.) was equally barren of proof:
"Q. Was that question taken up at a meeting of stockholders or directors? A. My memory is vague on that.
"Q. Do you have the minute books of the corporation here for the year 1937? A. Yes.
"Q. Will you please look at them.

A. I can (tell) you there is nothing in them. That is why we passed those resolutions in 1948. (The reference there was to the resolution adopted following Collector's disallowance of the tax payments as a deduction.)
"Q. That (there) is nothing in them about the corporation paying this tax? A. No, sir."

896

that there was no showing that the State tax payments "were ordinary in character or that they were in any way related to the taxpayer's business of publishing newspapers" and that they "in no way benefitted anyone but the stockholders."

For the reasons stated the judgment of the District Court will be affirmed.[9]

9. It may be noted that the taxpayer contended below that it was entitled to a deduction for the State tax under Section 23(c) of the Internal Revenue Code which allows as a deduction "taxes paid or accrued within the taxable year". The District Court ruled to the contrary and the taxpayer abandoned this contention in this appeal.