**In re LEICHTER.**

No. 10659.

United States Court of Appeals
Third Circuit.

Argued April 24, 1952.

Decided July 7, 1952.

George F. Losche, Hackensack, N. J., for appellant.

Max L. Rosenstein, Newark, N. J., for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

Can a bankrupt be denied his discharge in bankruptcy on the mere showing that, in his capacity as president of a corporation of which he was a stockholder, he gave a false financial statement with respect to its corporate assets which induced a loan to the corporation?

This is the primary question presented by this appeal by a bankrupt from the affirmance by the Dsitrict Court of the Order of a Referee in Bankruptcy denying his discharge.

The denial of the discharge was premised by the Referee on the bankrupt's alleged violation of the provisions of Section 14 sub. c(3) of the Bankruptcy Act as amended.[1]

Section 14 sub. c(3) provides:

"c. The court shall grant the discharge unless satisfied that the bankrupt has * * * (3) obtained money or property on credit, or obtained an extention or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; * * *."

A detailed statement of the litigation and the transaction on which the Referee based his finding that there was a false statement given by the bankrupt in negotiating a loan for his corporation is stated in the margin.[2]

1. Title 11 U.S.C.A. § 32, sub. c(3) Supp.

2. On May 11, 1948, Morris R. Leichter filed his petition in bankruptcy in the United States District Court for the District of New Jersey. On August 10, 1948, an Order of Discharge was entered. Twenty months later (on April 13, 1950) Moses F. Dworsky and Philip Dworsky, co-partners trading as Fidelity Factors, filed their Specifications of Objections to Discharge, and hearings were had thereon on May 17, 1950 and November 8, 1950. On June 28, 1951, pursuant to a memorandum which he filed that day, the Referee entered an Order, denying discharge to the bankrupt based on his conclusion that the bankrupt had violated Section 14, sub. c(2) and 14, sub. c(3) of the Bankruptcy Act. The memorandum recited that in 1944 the objecting creditors entered into an agreement with Morris R. Leichter, Inc. (corporation) wherein they made a loan to the corporation in the sum of $7,500 and accepted as a pledge 75 barrels of glaced cherries, finished, stored in a warehouse in

The Referee made the specific finding that the bankrupt in his capacity as president and general manager of a corporation made a false statement as to its assets and obtained credit for it as a result. The record sustains that finding. Additionally, although he did not do so in specific terms, the Referee found the bankrupt was "a large stockholder" of the corporation. That is apparent from the fact that in concluding the bankrupt had violated the provisions of Section 14, sub. c(3) he said:

"It has been settled by the Supreme Court of the United States that it is sufficient for the bankrupt to have received indirectly the benefit from the false statement as by credit given to a corporation of which the bankrupt was the president, general manager and *large stockholder.*" (Emphasis supplied.)

The record, however, utterly fails to support the Referee's determination that the bankrupt was "a large stockholder" in the corporation. Indeed, it is bare of any proof as to the extent of the stock holdings of the bankrupt; there is only testimony to the effect that he was a stockholder— nothing more, nothing less. Moreover, there is nothing in the Referee's statement of facts or in his conclusion of law which gives any light as to his reason for finding that the bankrupt was "a large stockholder". Apparently the Referee based his finding on "speculation" or "intuition".

On that score, we have on previous occasions held that "A finding of fact must have more substantial foundation than an intuition * * *." and that while the trier of the facts " '* * * has the primary function of finding the facts * * *. weighing the evidence, and choosing from among conflicting factual inferences and conclusions those which it considers most reasonable' it is well-settled that speculation cannot be substituted for proof and 'the requirement is for probative facts capable of supporting, with reason, the conclusions expressed in the verdict.' " In re Tueders' Estate, 3 Cir., 1947, 164 F.2d 128, 133; Sharon Herald Co. v. Granger, 3 Cir., 1952, 195 F.2d 890, 895.

Under the circumstances we are constrained to reverse the judgment of the District Court (affirming the Referee's determination) that there had been a violation by the bankrupt of Section 14, sub. c(3). The absence of proof as to the extent of the bankrupt's stock interest in the corporation makes academic here the holding of the Supreme Court in Levy v. Industrial Finance Corporation, 1928, 276 U.S. 281, 48 S.Ct. 298, 72 L.Ed. 572, relied on by the Referee, or Wilensky v. Good-

the City of New York; that it subsequently developed that 67 of the barrels contained red water instead of glaced cherries; and that the bankrupt was the president of the corporation and acted for it in negotiating the agreement.

On July 12, 1951, bankrupt filed "A Petition for Review of Referee's Order Denying Discharge" and on September 28, 1951, the District Court filed an Order recommitting the cause to the Referee "for further testimony and argument, if deemed necessary by the Referee, and for amendment of findings * * *" for the reason that " * * * the Referee's findings do not specifically set forth the evidence upon which his findings of violations of Sections 14, sub. c(2), and 14, sub. c(3) are based" as required by General Order 47, section 30 of the Bankruptcy Act, Title 11 U.S.C.A. § 53. No further testimony was taken by the Referee but on October 16, 1951, he filed an amended memorandum, which he designated as "Referee's Amended Certifi-

cate of Review". In the latter, the Referee amplified his discussion of the pledge of 75 barrels with the specific findings that the bankrupt had learned that the 67 barrels contained "red water" about two weeks subsequent to the advance of $7,560 by the objecting creditors; that he had failed to advise the latter of the fact; that the barrels were packed in the factory of the corporation; that the bankrupt was the president of the corporation actively engaged in its operation; that he was the one who had the barrels under his dominion and control and knew what they contained; that he represented them in writing to contain cherries; that the loan was made upon his representation and that the representation was untrue.

The Referee made no findings of fact with respect to his conclusion that the bankrupt had violated the provisions of Section 14, sub. c(2) relating to the destruction, falsification or failure to keep or preserve books of account, etc.

year Tire & Rubber Co., Inc., 1 Cir., 1933, 67 F.2d 389, and In re Licht, D.C.E.D.N.Y. 1930, 45 F.2d 844, cited by counsel for the objecting creditors in support of the judgment of the District Court. In the Levy case the bankrupt was a *large* stockholder in the corporation and in both the Wilensky and Licht cases he was the *sole* stockholder.

It may be observed, with respect to the Levy case that it involved the construction of Section 14, sub. b(3)[3] of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 550; June 25, 1910, c. 412, Sec. 6, 36 Stat. 838, 839, 11 U.S.C.A. § 32, sub. b(3).

That fact was referred to by Mr. Justice Holmes who spoke for the Supreme Court in the Levy case. In doing so he pointed out 276 U.S. at pages 283, 284, 48 S.Ct. at page 298, that Section 14, sub. b(3) had been amended by the Act of May 27, 1926[4] and that "The * * * amendment * * * serves to limit the bars to a discharge more narrowly and by indirection to favor the defendant's (bankrupt's) position by a change of the words to 'a materially false statement * * * *respecting his financial condition*.'" (Emphasis supplied.)

Whether under the 1926 and subsequent amendments [5] a false statement concerning the financial condition of a corporation in which the bankrupt was the sole stockholder may be deemed a false statement concerning the bankrupt's own financial condition, need not be here decided because even under the Referee's own finding the bankrupt in the instant case was not the sole stockholder but only "a large stockholder".

There remains for disposition one other point. The Referee also premised his denial of the discharge on his finding that the bankrupt had violated the provisions of Section 14, sub. c(2) of the Bankruptcy Act, as amended,[6] by failing to preserve

"books of account or records, from which his financial condition and business transactions might be ascertained". The Referee, however, failed to set forth the evidence upon which his fact finding and conclusions of law with respect to the alleged violation were premised, as he was required to do under General Order 47, Section 30 of the Bankruptcy Act.[7]

■■ The failure to comply with General Order 47 would alone require reversal of the Referee's denial of the discharge on the ground that the bankrupt had violated Section 14, sub. c(2). However, even had there been compliance with General Order 47, the record itself discloses that the Referee's finding that the bankrupt had violated Section 14, sub. c(2) was clearly erroneous. It was testified that in 1945, three years prior to the filing of his bankruptcy petition, the bankrupt closed out a checking account with his bank and after he had done so, disposed of his check books, bank books and cancelled vouchers. There was nothing in the evidence to show that the missing records were necessary to determine the bankrupt's financial status as of the date of the filing of the bankruptcy petition, or that there was any fraudulent intent on the part of the bankrupt in discarding them. To sustain an objection to a discharge under Section 14, sub. c(2) the evidence must disclose that the failure to preserve records makes it impossible to determine the bankrupt's "financial condition" and material "business transactions". In re Milne, D.C. N.J.1941, 40 F.Supp. 89, 91; In re Weisberger, D.C.M.D.Pa.1930, 41 F.2d 275.

■■ We have on previous occasions held that in a review proceeding the burden is upon the objecting creditor to establish the facts necessary to prevent the bankrupt's discharge. Lodi Trust Co. v. Cohn, 3 Cir., 1939, 108 F.2d 26; In re Wolf, 3

---

3. Section 14, sub. b(3) provided "the judge shall * * * discharge the applicant unless he has * * * (3) obtained money or property or credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person".

4. c. 406, § 6, 44 Stat. 663.

5. Retained in the subsequent amendments of June 22, 1938, c. 575, § 1, 52 Stat. 850, and May 24, 1949, c. 139, § 130, 63 Stat. 107, Title 11 U.S.C.A. § 32, sub. c(3) Supp.

6. Title 11 U.S.C.A. § 32, sub. c(2).

7. Title 11 U.S.C.A. following § 53.

Cir., 1948, 165 F.2d 707, 710. In the instant case the objecting creditor failed to sustain that burden. It is regrettable that the Referee failed to give consideration to the well-settled principles that the right to a discharge is statutory, and that Section 14 of the Bankruptcy Act must be construed strictly as against the objector and liberally in favor of the bankrupt. Roberts v. W. P. Ford & Sons, 4 Cir., 1948, 169 F.2d 151; In re Pinkston, D.C. Texas, 1950, 93 F.Supp. 942.

For the reasons stated the Order of the District Court denying the bankrupt's discharge will be reversed.