**In the Matter of Arthur J. HALPERN, Bankrupt.**

**No. 65–B–1010**

United States District Court
E. D. New York.

Jan. 11, 1967.

Julius Zizmor, New York City, for bankrupt.

John M. Friedman, New York City, for Chase Manhattan Bank (N.A.).

BARTELS, District Judge.

The bankrupt, Arthur J. Halpern, petitions this Court to review the order of the Referee, dated July 29, 1966, sustaining specification #1 of three specifications of objections to his discharge by The Chase Manhattan Bank, a creditor, on the ground that the bankrupt failed to keep books of account or records from which his financial condition and business transactions might be ascertained.

The bankrupt, 26 years of age, filed a voluntary petition in bankruptcy on October 5, 1965. From 1957 until April, 1963 he was an officer and employee of corporations owned by his father, Joseph Halpern, but was not a stockholder or a director of such corporations and had no financial interest in the corporations or business ventures of the father. At no time was he engaged in business for himself.

One of the corporations of which the bankrupt was an officer was Vaughn Construction Corporation, on behalf of which the bankrupt executed notes, checks, purchase orders, and indemnity bonds. In 1962 and 1963 Vaughn was engaged in a large construction job in Troy, New York, under a contract with the Federal Government, and in connection with which it had an outstanding loan from the Chase, which was personally guaranteed by the bankrupt and other members of the Halpern family. In order to enable Vaughn to increase its line of credit with Chase, the bankrupt in November 1962 pledged to Chase a passbook representing his personal savings account with the Chase, in which there was a balance of $25,000. In April 1963, while the bankrupt was in Pakistan on behalf of one of his father's corporations, a cofferdam at the construction site collapsed, as a result of which Vaughn lost its contract with the Government and became insolvent. Thereupon Vaughn's creditors sought the secondary endorsers of its obligations. At that time the bankrupt did not have sufficient assets to discharge his various liabilities which aggregated over $96,000 to Vaughn's creditors. A month later, in May 1963, the bankrupt requested Chase to release his savings passbook held as security for the Chase loan, and to substitute therefor his savings passbook with the Chemical Bank New York Trust Company, which also showed a $25,000 balance. Upon the substitution Chase released the funds in its savings account to the bankrupt. But the Chemical Bank refused to acknowledge the assignment because the balance shown in the bankrupt's passbook was

represented by a check upon which he had forged his father's name and which the drawee therefore refused to honor. The bankrupt deposited the $25,000 received from Chase in a safe deposit box rented in the name of his mother-in-law. This sum, the bankrupt testified, was disposed of as follows:

$16,500   returned to his father to induce the latter to withdraw a criminal charge against the bankrupt;

1,000   for a plane ticket to Europe;

1,500   for three months' living expenses in Europe;

1,000   to his wife;

5,000   appropriated by his wife from the safe deposit box at the time of their separation.

After leaving his father's employ in April 1963, the bankrupt went to Europe, apparently to seek a business venture of his own, which however he failed to discover. From 1963 until the filing of his petition in 1965, the earnings of the bankrupt consisted of $792 in 1963 and $1,253 in 1964 derived from the sale of advertising. The bulk of his liabilities arose from guarantees and endorsements of the obligations of his father's corporations. At no time did the bankrupt keep any books or financial records.

## I

The Referee found that since the bankrupt signed the guarantees, checks and evidences of indebtedness above mentioned on behalf of his father's corporations and entertained and travelled to foreign countries on the business of these corporations, he was more than an employee and accordingly was obligated to keep books and records of his financial transactions.

The difficulty with the Referee's conclusion is his failure to distinguish between the bankrupt's individual transactions and the transactions of his father's corporations, of which he was only an officer and employee. It is admitted that these corporations kept adequate books and records and that the liabilities upon which the bankrupt was secondarily liable, were all recorded therein. It would indeed, be unusual to require an officer or an employee of such corporations to also keep books recording the same transactions. There is no evidence that the bankrupt had any independent business or transactions and the record is barren of any proof that the bankrupt was anything more than a simple wage earner. While the fact that he was a wage earner is not sufficient to excuse him from keeping books and records if the nature and extent of his transactions were such that others in like circumstances would ordinarily keep such books and records (In re Sandow, 2 Cir. 1945, 151 F.2d 807; 1 Collier on Bankruptcy § 14.32, note 27), there is nothing in the record to indicate that he had any such transactions. The activities of the bankrupt, in endorsing corporate notes and liabilities, were to insure the credit standing of his father's corporations. These transactions were not for his own benefit, nor did they involve the receipt or disbursement of any funds by him. The entertainment and trips to Europe were for the benefit of the corporations except the trip made after the bankrupt left his father's employ which did not result in any business transaction. Consequently there was no showing that books and records were necessary to determine the bankrupt's financial condition at the time he filed his petition. In re Leichter, 3 Cir. 1952, 197 F.2d 955, cert. denied, 1953, 344 U.S. 914, 73 S.Ct. 336, 97 L.Ed. 705. It is wholly unrealistic to treat the bankrupt's activities on behalf of the corporations as individual activities simply because they ultimately subjected him to individual liabilities as a secondary guarantor of the corporation's obligations. Under the circumstances, it is the opinion of the Court that failure of the bankrupt to keep books was patently justified and that the Referee's decision was erroneous in barring his discharge upon this specification. In re Spitzer, S.D.N.Y.1949, 83 F.Supp. 380; Morris Plan Industrial Bank of New York v. Dreher, 2 Cir. 1944, 144 F. 2d 60; In re Leichter, supra. Upon this issue the facts are established and the

Court is not required to apply the "clearly erroneous" standard.

## II

■■ Chase, however, did not predicate its objections to discharge upon this specification alone. It also interposed before the Referee two other grounds contained in specifications #2 and #3 for denying the discharge, which the Referee dismissed. Chase did not appeal from this dismissal since the Referee had decided in its favor on specification #1 of its objections. This failure to appeal, the bankrupt claims, prevents Chase from now raising these objections upon the ground that the Referee's decision has become *res judicata*. There is no merit to this contention. A party who has won his case before the Referee on one specification is not required to file a cross-petition in order to permit the Court to review other specifications raised by him on the record which were dismissed or decided adversely by the Referee. Section 39c of the Bankruptcy Act, 11 U.S.C.A. § 67(c), provides for the filing of a petition for review by a person aggrieved by an order of a Referee. One who is not so aggrieved, is not foreclosed by the petition of his adversary from asserting in support of the Referee's order, without filing a cross-petition, grounds other than those relied upon by the Referee. In re Michaels' Cafeteria, D.C.La.1943, 52 F. Supp. 799, 800; In re Schwartz, 2 Cir. 1937, 89 F.2d 172.

Specifications #2 and #3 of Chase's objections to the discharge are based upon Section 14c(1) of the Bankruptcy Act, 11 U.S.C.A. § 32, which bars a discharge if the bankrupt has committed an offense punishable by imprisonment under Title 18, United States Code, § 152. This section prescribes such punishment if, individually or as an officer of a corporation, a person "in contemplation of a bankruptcy proceeding by or against him or any other person or corporation, or with intent to defeat the bankruptcy law, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation". Specification #2 charges the bankrupt with violating this section by so transferring and concealing his property consisting of $25,000 in his savings account with Chase in contemplation of his own bankruptcy. Specification #3 charges the bankrupt with violating this section by so transferring and concealing the property of Joseph Halpern consisting of $25,000 in said savings account with Chase in contemplation of the bankruptcy of Joseph Halpern.

The Referee, in dismissing specification #2, found as a fact that in May 1963, at the time of the alleged concealment, the "bankrupt did not intend to file a petition in bankruptcy" and consequently concluded that the alleged concealment was not done in contemplation of bankruptcy or to defeat the bankruptcy law. No findings were submitted by the Referee to support his conclusion and it appears obvious that the Referee did not contemplate the possibility of an involuntary petition being filed against the bankrupt in reaching his judgment as to whether the transfer and concealment was "in contemplation of bankruptcy". Bankruptcy may be contemplated without being specifically intended, and it is not difficult to understand that the bankrupt, surrounded as he was by the secondary liabilities of his father's corporations, could at the time of the transfer foresee the inevitability of bankruptcy, involuntary if not voluntary. At all events, these avenues were not but should be completely explored and ventilated.

■ Specification #3 seems somewhat inconsistent with specification #2 since it is based upon the hypothesis that the $25,000 transferred from the Chase account belonged to the father, Joseph Halpern. The Referee dismissed this specification at the end of the hearing and without an opinion except a statement that "there has been no proof as to his concealment from his father's trustee at the time that these funds, the $25,000, was taken and then $16,500 was returned". There is no requirement under 18 U.S.C.A. § 152, paragraph 6, that the

transfer or concealment must be from the *trustee* as distinguished from any *creditor* of the bankrupt. United States v. Knickerbocker Fur Coat Co., 2 Cir. 1933, 66 F.2d 388, cert. denied, 1933, 290 U.S. 673, 54 S.Ct. 91, 78 L.Ed. 581. Since there was some doubt about the ownership of the funds at the hearings and since the bankrupt subsequently returned $16,500 to the father, the issue of ownership should be first determined by the Referee and thereafter further testimony should be adduced under specification #2 or #3, as the case may be, or under both specifications if ownership of the funds was divided, in order to ascertain whether the bankrupt's discharge should be barred under Section 14c(1) of the Bankruptcy Act, 11 U.S.C.A. § 32(c).

The Referee's order denying the bankrupt's discharge for failure to keep books and records is reversed and the matter is remanded to the Referee for further findings of fact and conclusions of law under Chase's specification #2 and/or #3.

Settle order within ten (10) days upon two (2) days' notice.